The STATE of Ohio, Appellee,

v.

ODUBANJO, Appellant.

[Cite as *State v. Odubanjo* (1992), 80 Ohio App.3d 329.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60320

Decided May 26, 1992.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, for appellee.

*Hyman Friedman,* Cuyahoga County Public Defender, for appellant.

MATIA, Chief Justice.

Defendant-appellant appeals from convictions on drug counts and violence specifications rendered by the Cuyahoga County Court of Common Pleas. Appellant appeals his guilty pleas arguing that he did not make knowing, intelligent and voluntary pleas. On review, we find error and reverse the judgment of the trial court pertaining to sentencing and remand for resentencing.

## STATEMENT OF THE FACTS

Defendant-appellant, Suleman Odubanjo, entered a plea-bargain agreement with the state to several drug counts, enumerated below. Prior to appellant's guilty pleas, the prosecutor and appellant's counsel discussed with appellant the extensive aspects of the plea bargain.

At the time of the pleas, the court thoroughly explained the rights and the consequences and benefit of the plea agreement to appellant pursuant to Crim.R. 11.

Appellant Odubanjo was a non-U.S. citizen from Nigeria. He testified that he came to this country to complete his schooling and received a bachelor degree in accounting from Rust College in Mississippi. Appellant had been living in the United States for nine years at the time of his plea bargaining— and was working as a nursing assistant at a nursing home.

## STATEMENT OF THE CASE

On June 5, 1989, appellant was indicted by the Cuyahoga County Grand Jury for violation of seven counts of drug law, R.C. 2925.03; in count eight of using an automobile in the commission of a felony; in count nine of possession of criminal tools; in count ten of carrying a concealed weapon; and in counts eleven and twelve of felonious assault with two violence specifications.

On July 21, 1989, pursuant to a plea-bargain agreement involving the state of Ohio, appellant and his co-defendant common-law wife, appellant entered guilty pleas to counts one, four, six, eight, ten, eleven and twelve of the indictment. Pursuant to the agreement, counts two, three, five, seven, and nine were nolled by the state of Ohio. On July 28, 1990, appellant was sentenced on the guilty-plea counts.

Appellant's *pro se* motion for a delayed appeal was granted on September 5, 1990. This appeal follows.

## THE FIRST ASSIGNMENT OF ERROR

"Suleman Odubanjo has been deprived of his liberty without due process of law by his convictions, which was [*sic*] the result of an uninformed guilty plea [*sic*] and not the product of a knowing waiver of his constitutional rights."

Appellant argues in his first assignment of error that he was denied his due process of law. Specifically, appellant argues that his convictions were the result of an uninformed guilty plea.

This assignment of error is not well taken.

## ISSUE: WHETHER APPELLANT'S GUILTY PLEA WAS THE PRODUCT OF A KNOWING, INTELLIGENT AND VOLUNTARY WAIVER OF HIS CONSTITUTIONAL RIGHTS

Appellant argues that his guilty pleas to a multi-count indictment were uninformed because at no time did Judge O'Donnell advise him of the

consequence those pleas would have on his continued status in the United States. Appellant's argument is not persuasive.

 Crim.R. 11(C)(2) sets out the procedures that a trial court must follow before it can accept a guilty plea. When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11 have been followed. Crim.R. 11 provides in pertinent part:

"C. Pleas of guilty and no contest in felony cases.

" * * *

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

 Furthermore, in reviewing the record on appeal, the appellate court should inquire as to whether the defendant voluntarily and knowingly waived his constitutional rights. As the United States Supreme Court stated in *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279, the defendant's rights include: (1) the Fifth Amendment privilege against compulsory self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. Accord *State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474, 475.

In the case *sub judice*, the record indicates that the trial judge explained all the constitutional rights appellant was entitled to pursuant to Crim.R. 11. In reviewing the colloquy between the trial court and appellant and the statements made by the court as to appellant's understanding of his rights, we find that appellant was informed of his constitutional rights pursuant to Crim.R. 11.

■ In reviewing appellant's contention that he was prejudiced in his guilty pleas because he was not advised of the possibility of his deportation pursuant to R.C. 2943.031, we note that the effective date for that statute was October 2, 1989, subsequent to the date of appellant's arrest and indictment and, therefore, was not controlling.

R.C. 2943.031 provides that the court must ask a defendant if he is a citizen of the United States, and if he is not, then the court is required to give the following advisement:

" 'If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' "

■ Prior to the legislative enactment of R.C. 2943.031, the burden of advising defendants of this deportation consequence was incumbent upon defendant's counsel. Then, to argue such error, defendant had to show prejudice from ineffective assistance of counsel. See *State v. Arvanitis* (1986), 36 Ohio App.3d 213, 522 N.E.2d 1089.

In *Arvanitis,* defendant was a Greek national who had immigrated to the United States in 1955. In 1974, Arvanitis was indicted on a charge that he unlawfully sold a narcotic drug. Defendant pleaded not guilty. With the benefit of counsel, defendant withdrew his plea of not guilty and entered a plea of guilty to the lesser offense of possession of narcotics. Defendant was sentenced to prison and served one year of his sentence.

After defendant was released on parole, the Immigration and Naturalization Service conducted deportation hearings. Nine years after he was deported, Arvanitis sought to withdraw his guilty plea, arguing that he was not informed by counsel that his guilty plea could result in deportation.

The Ohio Court of Appeals in *Arvanitis* found the issue one of first impression and looked to federal courts and other state court decisions to make its determination. The *Arvanitis* court, quoting the Supreme Court in *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203, reasoned that:

" 'The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." * * * Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of

attorneys in criminal cases." * * * [A] defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson* (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763]." * * *'

"The federal courts have consistently held that actual knowledge of the collateral consequences of a guilty plea is not a prerequisite to the entry of a knowing and intelligent plea; and, therefore, the defendant's ignorance of the possibility of deportation does not render a guilty plea involuntary. *United States v. Campbell* [ (11th Cir.1985) ] *supra* [778 F.2d 764], at 768; *United States v. Gavilan* [ (5th Cir.1985) ], *supra* [761 F.2d 226], at 228; *United States v. Santelises* [ (2d Cir.1975) ], *supra* [509 F.2d 703], at 704." *Arvanitis*, 36 Ohio App.3d at 217 [522 N.E.2d at 1093–1094].

Reviewing the facts of its own case in *Arvanitis*, the appeals court concluded that:

"Based on the facts of this case, we are not disposed to announce a hard and fast rule as to whether counsel's failure to inform an alien defendant of deportation consequences of a guilty plea is 'a substantial violation of any of defense counsel's essential duties to his client' so as to render counsel's assistance ineffective under *State v. Lytle* [ (1976) ], *supra* [48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623], and *Strickland v. Washington* [ (1984) ], *supra* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674]. Instead, we hold that the incompetence alleged here, if indeed it was incompetence, did not cause defendant substantial prejudice. Put another way, defendant's plea was not influenced by counsel's failure to inform him of deportation consequences; and without this influence, defendant's plea was not involuntary." *Arvanitis*, 36 Ohio App.3d at 218 [522 N.E.2d at 1094–1095].

 In the case *sub judice*, since we cannot hold the court accountable for the advisement required in R.C. 2943.031 because of the date of its effectiveness, we must look to appellant's counsel to determine whether counsel failed to inform him of the deportation consequences of a guilty plea. We find that answer to be negative.

A review of the transcript of the plea bargain reveals that defense counsel asked the court to take into consideration in its sentencing the fact that after appellant finished serving the imposed sentence he would be deported:

"I think it's quite clear that upon finishing his sentence that the Court imposes here he will be deported back to Nigeria, and as a result of the conduct he's engaged in, he likely would not see his family again, he will not see his children again, he will lose the companionship of his family and

perhaps that is as harsh a consequence, perhaps more harsh a consequence than any sentence the Court might impose."

We can presume then that this issue had been discussed by defense counsel with appellant. Assuming, *arguendo*, that such a discussion did not take place, appellant cannot show substantial prejudice by an alleged omission to inform him of the deportation consequences of a guilty plea. *Arvanitis, supra.*

In conclusion, appellant's Assignment of Error I is not well taken. The court substantially complied with Crim.R. 11 in its colloquy concerning appellant's constitutional rights. The court was not responsible under the dictates of R.C. 2943.031 for informing appellant of the deportation consequences of his guilty plea and, finally, appellant cannot show prejudice if his counsel failed to inform him of the consequences since there was overwhelming other evidence that appellant was guilty of the crimes charged.

Accordingly, Assignment of Error I is overruled.

## THE SECOND ASSIGNMENT OF ERROR

"II. Suleman Odubanjo has been deprived of his liberty without due process of law by his sentence for eight to twenty-five years on his conviction for aggravated trafficking, as said sentence exceeds the statutorily permissible sentences for the crime for which he was convicted."

Appellant argues in his second assignment of error that the trial court erred in its imposition of sentence. Specifically, appellant argues that his sentence of eight to twenty-five years for aggravated trafficking in drugs was statutorily impermissible.

This assignment of error is well taken.

## ISSUE: WHETHER APPELLANT WAS IMPROPERLY SENTENCED ON ONE COUNT OF HIS CONVICTION

Appellant argues error in the imposition of sentence on count six of the charge. Count six of appellant's indictment for drug law, R.C. 2925.03, reads that appellant "did sell or offer to sell a controlled substance, to-wit: Cocaine. Schedule II Drug, being an amount equal to or exceeding three times the bulk amount." Under R.C. 2925.03(A)(7), the offense is a felony of the first degree and the court shall impose a sentence of actual incarceration of five years.

Under R.C. 2929.11(B)(4) the minimum term for a felony of the first degree shall be four, five, six, or seven years, and the maximum term shall be twenty-five years. In the case *sub judice*, appellant received a sentence of eight to twenty-five years for count six, a first degree felony. This was plain error

pursuant to R.C. 2929.11(B)(4) which designates the minimum-maximum term for a first degree felony to be four, five, six, or seven years to twenty-five years. See *State v. Dickey* (1991), 61 Ohio St.3d 175, 573 N.E.2d 1079. The court, therefore, committed plain error in sentencing appellant to *eight* to twenty-five years on count six.

Appellee state argues that the trial court's sentence was entirely proper pursuant to *State v. Smith* (1989), 42 Ohio St.3d 60, 537 N.E.2d 198, and *State v. Leggett* (Feb. 15, 1990), Cuyahoga App. No. 57815, unreported, 1990 WL 14190. (R.C. Chapter 2925 is applied as a penalty enhancement statute which must be read and enforced in conjunction with R.C. Chapter 2929.) We find, however, that the application of *Smith* and *Leggett* to the case *sub judice* will not correct the sentencing error.

In *State v. Arnold* (1991), 61 Ohio St.3d 175, 573 N.E.2d 1079, the Ohio Supreme Court construed R.C. 2925.03 and 2929.11. In *Arnold,* the court held that where a defendant has been convicted of trafficking in drugs in violation of R.C. 2925.03(A), the *indefinite term of imprisonment prescribed by R.C. 2929.11(B) is imposed in addition to a period of actual incarceration prescribed by R.C. 2925.03(C).* *State v. Smith, supra,* followed. The trial court, therefore, must impose a statutory minimum as directed by R.C. 2929.11, and this sentence will be served in addition to the period of actual incarceration prescribed by R.C. 2925.03 which is five years. Herein, the trial court sentenced appellant to eight years to twenty-five on count six, a felony of the first degree. Under R.C. 2929.11(B)(4) appellant's indefinite term for his conviction can only be seven years to twenty-five years, which appellant will serve subsequent to the five-year actual sentence imposed by R.C. 2925.03.

Therefore, appellant's sentence on count six is vacated and the cause is remanded to the trial court for imposition of a new sentence to reflect an indefinite term of four, five, six or seven years to twenty-five years as prescribed in R.C. 2929.11 for a first degree felony. This indefinite term is to be served subsequent to the term of actual incarceration prescribed by R.C. 2925.03. Accord *State v. Arnold, supra.*

Accordingly, the trial court is affirmed in part, reversed in part and the cause remanded for resentencing.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

NAHRA and FRANCIS E. SWEENEY, JJ., concur.