916 P.2d 689

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Tuan Quoc NGUYEN, Defendant–Appellant.**

**No. 17535.**

Supreme Court of Hawai'i.

May 7, 1996.

---

280

James S. Tabe, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Mark R. Simonds, Deputy Prosecuting Atty., County of Maui, on the briefs, Wailuku, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Tuan Quoc Nguyen, a resident alien, appeals from the denial of his Hawaiʻi Rules of Penal Procedure (HRPP) Rule 32(d) motion to withdraw his 1985 "no contest" plea to Promoting a Dangerous Drug in the Third Degree. Based on our review of the record, we affirm.

## I. BACKGROUND

On November 18, 1975, Nguyen immigrated from Vietnam to the United States. Since his immigration, Nguyen has lived in the United States as a resident alien and has continued to retain his Vietnamese citizenship.

On November 16, 1984, Police Officers David Shishido and Carl Washington observed Nguyen driving his automobile erratically on Honoapiʻilani Highway, Lahaina, Maui. Believing that Nguyen was driving under the influence of an intoxicant, Officer Shishido and Officer Washington had Ngu-

yen pull over to the side of the highway. When Officer Shishido and Officer Washington asked Nguyen to produce his license, automobile registration, and proof of insurance, they detected an odor of alcohol emanating from Nguyen's breath, and they noticed that Nguyen was trying to push a plastic packet containing a white substance under the floor-carpet with his foot. During the ensuing investigation, Officer Shishido and Officer Washington discovered that the white substance in the plastic packet was cocaine, and they also found marijuana inside of Nguyen's automobile. Nguyen was arrested for Driving Under the Influence of Drugs, Hawai'i Revised Statutes (HRS) § 291-7 (1985), Promoting a Dangerous Drug in the Third Degree, HRS § 712–1243 (1985), and Promoting a Detrimental Drug in the Third Degree, HRS § 712–1249 (1985). On April 15, 1985, a grand jury indicted Nguyen for Promoting a Dangerous Drug in the Third Degree and Promoting a Detrimental Drug in the Third Degree.

On November 14, 1985, Nguyen entered a plea of "no contest"[1] in the Circuit Court of the Second Circuit (circuit court) with respect to the cocaine-related charge of Promoting a Dangerous Drug in the Third Degree in exchange for the State of Hawai'i's (prosecution) promise to dismiss the marijuana-related charge of Promoting a Detrimental Drug in the Third Degree. Nguyen signed a "No Contest" plea form indicating that he was pleading "no contest" to Promoting a Dangerous Drug in the Third Degree, and stating that he "will stipulate to the factual basis for the one charge listed in this document." Nguyen's "No Contest" plea form stated, in pertinent part, the following:

> I have received a written copy of the original charge in this case. My lawyer has explained the charges to me. I understand the original charge against me. I told my lawyer all the facts I know about the case. He discussed with me the gov-

ernment's evidence against me, and advised me of the facts which the government must prove in order to convict me and of the possible defenses which I might have.

> . . . .

> I plead no contest because, after discussing all the evidence and receiving advice on the law from my lawyer, I believe that it is better to put myself at the mercy of the court.

> I know that I still have the right to plead not guilty and have a trial by jury or by the court in which the government will be required to prove me guilty beyond a reasonable doubt. I know that in a trial, I can see, hear and question the witnesses who may testify against me, I can call my own witnesses to testify for me, and I do not have to take the stand and testify if I do not wish to do so. I know that I have a right to a speedy and public trial. I know that by pleading in this matter, I am giving up my right to a trial and may be found guilty and sentenced without a trial of any kind. I plead in this manner because (give brief factual statement of what defendant did):

> N/A. Defendant will stipulate to the factual basis for the one charge listed in this document.

> My lawyer has told me about the possible maximum indeterminate sentence indicated above for my offense. He also explained to me the possibility of my indeterminate maximum term of imprisonment being extended and explained that I may have to serve a mandatory minimum term of imprisonment without possibility of parole.

> I am pleading of my own free will. No one is putting any kind of pressure on me or threatening me or anyone close to me to force me to plead. I am not taking the rap

---

1. Nolo contendere, or "no contest," is defined as a "[t]ype of plea which may be entered with leave of court to a criminal complaint or indictment by which the defendant does not admit or deny the charges, though a fine or sentence may be imposed pursuant to it. The principle difference between a plea of guilty and a plea of nolo contendere is that the latter may not be used against the defendant in a civil action based upon the same acts. . . . . Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." *Black's Law Dictionary* 1048 (6th ed. 1990) (citations omitted).

or pleading to protect someone else from prosecution.

I have not been promised any kind of deal or favor or leniency by anyone for my plea, except that I have been told that the government has agreed as follows: (If None Write None [sic])

The State will dismiss Promoting a Detrimental Drug in the Third Degree.

I know that the court is not a party to, so that it does not have to recognize, any deal or agreement between the prosecutor and my lawyer or me. I know that the court has not promised me leniency.

. . . .

I am signing this paper after I have gone over all of it together with my lawyer, and I am signing it in the presence of my lawyer. I have no complaints about my lawyer and I am satisfied with what he/she has done for me.

Nguyen's attorney also signed the "No Contest" plea form, which contained a "Certificate of Counsel" section that stated the following:

As counsel for defendant and as an officer of the Court, I certify that I have read and explained fully the foregoing, that I believe that the defendant understands the document in its entirety, that the statements contained herein are in conformity with my understanding of the defendant's position, that I believe that the defendant's plea is made voluntarily and with intelligent understanding of the nature of the charge and possible consequences, and that the defendant signed the foregoing in my presence.

Although Nguyen made his "no contest" plea at the court hearing on November 14, 1985, with the assistance of a Vietnamese interpreter, Nguyen had some command of the English language. At Nguyen's hearing, the following dialogue took place between Judge E. John McConnell, Nguyen, Nguyen's attorney, Deputy Public Defender Tom Griswold, Nguyen's interpreter, An Nguyen, and Deputy Prosecuting Attorney Ruby Hamili:

MR. GRISWOLD: Tom Griswold appearing with Tuan Quoc Nguyen and we do have Mrs. Nguyen who is the interpreter who may need to be sworn.

THE COURT: Yes, I'll ask that the interpreter be sworn.

(At which time the interpreter was sworn to interpret from Vietnamese into English and English into Vietnamese to the best of her ability.)

MR. GRISWOLD: Your, Honor, we have reached an agreement with the State which has necessitated a little bit of a pen job in the plea of no contest, but it was corrected before I went over it with the defendant.

Essentially he's pleading to one of the offenses, promoting a dangerous drug in the third, in exchange for a promoting a detrimental drug in the third degree as stated and there are no other agreements.

THE COURT: I think we should have the interpreter's name for the record.

THE INTERPRETER: A-n, my last, N-g-u-y-e-n.

THE COURT: Thank you. I'm going to be asking the defendant a long series of questions so after I ask each question I will give you a chance to interpret and then to give his response.

THE INTERPRETER: Okay.

THE COURT: I would ask Mr.—how do you pronounce your name? Nguyen? I'd ask you to state his name for the record.

THE DEFENDANT: Tuan Quoc Nguyen.

THE COURT: How old are you?

THE DEFENDANT: I am 31.

THE COURT: Apparently you can speak some English?

THE DEFENDANT: Yes, sir.

THE COURT: If you are able to answer the questions then you can answer in English, but if you don't understand the question then use the interpreter.

THE DEFENDANT: Yes.

THE COURT: How much education have you had?

THE DEFENDANT: 12 [sic] grade.

THE COURT: Are you under the influence of alcohol or any drugs at the present time?

THE INTERPRETER: No, sir.

THE COURT: Are you under treatment for any mental illness?

THE INTERPRETER: No, sir.

THE COURT: Is your mind clear?

THE INTERPRETER: Yes, sir.

THE COURT: Your lawyer, Mr. Griswold, says you will plead no contest to the charge of promoting a dangerous drug in the third degree; is that correct?

THE INTERPRETER: Yes, sir.

THE COURT: And he has given me this written no contest plea which appears to have your signature on the second page. Is this your signature?

THE DEFENDANT: Yes.

THE COURT: Did you read this form and did your lawyer go over it fully and explain it to you before you signed it?

THE INTERPRETER: Yes.

THE COURT: The charge against you is promoting a dangerous drug in the third degree. Actually there were two charges originally, promoting a dangerous drug in the third degree and promoting a detrimental drug in the third degree. Have these charges been explained to you by your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the charges?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the charges?

THE DEFENDANT: I have no question.

THE COURT: You have no question about the charge itself?

THE INTERPRETER: But I would like to have some explanation later.

THE COURT: He wants to make an explanation?

THE INTERPRETER: I don't have question [sic], but I would like to have explanation [sic] later.

THE COURT: Does he want to make an explanation or does he want the Court to make some kind of explanation?

THE INTERPRETER: He wants to make his explanation.

THE COURT: All right, we'll get to that. Do you understand that the maximum penalty provided by law for this offense is five years in prison and a $5,000.00 fine?

THE DEFENDANT: Yes, sir.

THE COURT: Is there any possibility this defendant may be eligible for extended term, repeat offender, or other enhanced sentencing?

MS. HAMILI: No, your Honor. There's no possibility.

THE COURT: Knowing the penalty, Mr. Nguyen, do you still wish to plead no contest?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the right to a speedy and public trial by jury, but by pleading no contest you're giving up your right to a trial?

THE DEFENDANT: Yes, I understand.

THE COURT: Do you understand that you have the right to a trial no matter how strong the evidence against you?

THE INTERPRETER: I understand.

THE COURT: He understands? You understand that if you demand a trial the State must prove you guilty beyond a reasonable doubt?

THE DEFENDANT: I understand.

THE COURT: Do you understand that if you demand a trial your lawyer could cross-examine the witnesses against you?

THE DEFENDANT: Yes, I understand.

THE COURT: Do you understand that if you demand a trial you have the right to testify or to remain silent?

THE DEFENDANT: Yes.

THE COURT: The answer was yes?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you demand a trial you have the right to call and present your own witnesses?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading no contest you are giving up these rights and that there will be no trial at all?

THE DEFENDANT: Yes, sir.

THE COURT: Yes?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if I accept your no contest plea I will find you guilty and sentence you without a trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that after you are sentenced you will not be allowed to change your mind and have a trial if, for example, you do not like the kind of sentence you receive?

THE DEFENDANT: Yes.

THE COURT: Are you pleading no contest because someone is threatening you or forcing you to do so?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading no contest of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: For the record the plea agreement in this case is that the State will dismiss the promoting detrimental drug in the third degree charge. Is there anything you wish to add to that?

MS. HAMILI: No, your Honor. With respect to that count it's count three in the indictment.

THE COURT: All right. Mr. Griswold?

MR. GRISWOLD: Yes, sir, that is our understanding.

THE COURT: Has this agreement been explained to you, Mr. Nguyen?

THE DEFENDANT: Yes.

THE COURT: Apart from the plea agreement has any promise of any kind been made to you in return for the no contest plea?

THE DEFENDANT: Yes.

THE COURT: Maybe you didn't understand the question. The question was, apart from the plea agreement, that is the dismissal of the third count, has anybody made any promises to you in return for the no contest plea?

THE DEFENDANT: No promise.

THE COURT: Have you completely understood this proceeding?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the plea fully with Mr. Griswold, your attorney?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with Mr. Griswold's advice?

THE DEFENDANT: Yes.

THE COURT: The answer was what?

THE DEFENDANT: I go along with his advises [sic].

THE COURT: Is there a stipulation that there's a factual basis for the charge of promoting a dangerous drug in the third degree?

MS. HAMILI: Yes, your Honor. The State will so stipulate.

MR. GRISWOLD: Yes, sir, your Honor.

THE COURT: Does the defendant wish to tell the Court or make any explanation about the charge?

MR. GRISWOLD: Your Honor, I would prefer that we do that at sentencing.

THE COURT: All right, Mr. Nguyen, then what is your plea to the charge of promoting a dangerous drug in the third degree?

THE DEFENDANT: Yes.

THE COURT: What is your plea?

THE DEFENDANT: No contest.

THE COURT: Thank you. I will ask at this time that the defendant acknowledge questioning by the court by signing the second page of the written no contest plea.

MR. GRISWOLD: Your Honor, Mr. Nguyen has executed the no contest plea form.

THE COURT: The Court finds that the defendant voluntarily enters his plea of no contest with an understanding of the nature of the charge against him and the consequences of the plea. His plea is accepted and I find the defendant guilty of promoting a dangerous drug in the third

degree. Sentencing of the defendant is set for—

MR. GRISWOLD: Your Honor if we might, we spoke with the interpreter and we'd like to ask for a January setting.

THE COURT: January 17th, 1986 at 8:30 a.m. [sic]

MR. GRISWOLD: Yes, sir. Thank you.

THE COURT: The presentence investigation and report will be required.

MR. GRISWOLD: Thank you.

THE COURT: Is there anything else?

MS. HAMILI: No, your Honor.

THE COURT: Thank you.

At Nguyen's subsequent sentencing hearing on January 17, 1986, Judge McConnell sentenced Nguyen to probation for a period of five years under the following terms: commitment to the Maui Community Correctional Center for a period of six months, with the issuance of mittimus suspended as long as Nguyen complied with all the terms and conditions of probation; a fine of two hundred and fifty dollars; and two hundred and fifty hours of community service. Final judgment for this conviction was entered on January 20, 1986.

Over seven years later, the United States Immigration and Naturalization Service (INS) commenced involuntary deportation proceedings against Nguyen based upon his 1986 conviction for the cocaine-related charge of Promoting a Dangerous Drug in the Third Degree. On April 30, 1993, the INS issued an Order to Show Cause and Notice of Hearing to Nguyen, requiring Nguyen to appear before an immigration judge to show cause why he should not be deported from the United States.[2]

In response, on September 10, 1993, Nguyen filed a motion in the circuit court to withdraw his earlier "no contest" plea. Nguyen predicated his motion to withdraw his "no contest" plea on HRS Chapter 802E, enacted in 1988, which requires courts to warn defendants about, among other things, the possibility of deportation, before courts accept pleas of guilty or nolo contendere. Nguyen alleged that (1) when he had offered his "no contest" plea on November 14, 1985, Judge McConnell had failed to warn him that his "no contest" plea might result in deportation, (2) in light of the INS's subsequent deportation proceedings, Nguyen was the victim of manifest injustice, and (3) thus, he deserved to have his "no contest" plea withdrawn.

On September 15, 1993, the prosecution and Nguyen's attorney appeared before Judge McConnell to present oral arguments addressing Nguyen's motion to withdraw the plea. Counsel for Nguyen introduced, among other things, three exhibits into evidence: (1) Nguyen's "No Contest" plea form; (2) an official court reporter's transcript from the hearing on November 14, 1985, in which Nguyen had offered his "no contest" plea; and (3) a copy of the "Order to Show Cause and Notice of Hearing" showing that the United States Department of Justice was considering the possibility of deporting Nguyen. After reviewing the exhibits and arguments from both sides, Judge McConnell concluded that Nguyen had failed to make a sufficient showing of manifest injustice and,

2. The INS's Order to Show Cause and Notice of Hearing alleged in pertinent part as follows:

You were, on January 17, 1986, convicted in the Circuit Court of the Second Circuit, State of Hawaii, for the offense of Promoting a Dangerous Drug in the Third Degree, in violation of Section 712–1243 of the Hawaii Revised Statutes, to wit, cocaine.

. . . .

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:

. . . .

Section 241(a)(2)(B)(i) of the Immigration and Nationality Act (Act), as amended, in that, at any time after entry, you have been convicted of a violation of (or conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

. . . .

WHEREFORE, YOU ARE ORDERED to appear for a hearing before an immigration Judge of the Executive Office for Immigration Review of the United States Department of Justice . . . and show cause why you should not be deported from the United States on the charge(s) set forth above. . . . .

furthermore, that in 1985 the court had not been required to warn Nguyen that a "no contest" plea might possibly lead to Nguyen's deportation because the Hawai'i legislature had not yet enacted HRS Chapter 802E:

> THE COURT: The Court, of course, in this circumstance is governed by Rule 32(d) of the Hawaii Rules of Penal Procedure which requires a showing of manifest injustice to withdraw the plea and there's been no showing of manifest injustice to withdraw the plea and there's been no showing with respect to the merits of these charges. It's merely based on this later legislative policy that defendants who are not citizens be afforded the benefit of a warning with respect to potential consequences of the plea.
>
> It's now eight years since the plea. I'm not going to apply that statute retroactively and I don't think there's a sufficient showing of manifest injustice. I'll deny the motion.

On October 15, 1993, Judge McConnell issued the order denying Nguyen's motion to withdraw his "no contest" plea, ruling in pertinent part as follows:

> [T]he Court being advised in the premises, hereby finds that the Defendant has failed to demonstrate manifest injustice that would warrant granting the withdrawal of his No Contest plea. The Court further finds that Chapter 802E of the Hawaii Revised Statutes is not interpreted to be applied retroactively;
>
> IT IS HEREBY ORDERED that said Motion to Withdraw No Contest Pleas is denied.

Nguyen's timely appeal followed.

## II. *DISCUSSION*

Nguyen asserts that he should have been allowed to withdraw his "no contest" plea as a result of the subsequent enactment of HRS Chapter 802E (1993). HRS Chapter 802E currently requires a trial judge to advise a defendant who is not a United States citizen that a conviction upon a plea of guilty or nolo contendere could lead to deportation. Nguyen contends that (A) the circuit court abused its discretion in 1993 by denying his

motion to withdraw his "no contest" plea; and (B) the circuit court committed plain error in 1985 by accepting Nguyen's "no contest" plea. For the reasons set forth below, we affirm the circuit court's denial of Nguyen's motion to withdraw his plea.

### A. Abuse of Discretion

HRPP Rule 32(d) provides:

> **Withdrawal of a Plea of Guilty.** A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

"This court has observed that a liberal approach is to be taken when a motion to withdraw a plea is made under HRPP 32(d) before sentence is imposed." *State v. Adams*, 76 Hawai'i 408, 411, 879 P.2d 513, 516 (1994). The court should grant such a motion before imposition of sentence if (1) the defendant has presented "fair and just reasons" for his or her request, and (2) the prosecution has not relied upon the plea to its substantial prejudice. *State v. Merino*, 81 Hawai'i 198, 223–224, 915 P.2d 672, 697–98 (1996); *State v. Gomes*, 79 Hawai'i 32, 36, 897 P.2d 959, 963 (1995); *Adams*, 76 Hawai'i at 411, 879 P.2d at 516. In contrast, when a defendant moves to withdraw a plea of nolo contendere under HRPP 32(d) after imposition of sentence, only a showing of manifest injustice will entitle the defendant to withdraw his or her plea. *Adams*, 76 Hawai'i at 411, 879 P.2d at 516. When a trial court denies a motion to withdraw a plea, the trial court's determination will not be disturbed on appeal unless abuse of discretion is clearly shown. *State v. Smith*, 61 Haw. 522, 523, 606 P.2d 86, 88 (1980); *Adams*, 76 Hawai'i at 411, 879 P.2d at 516. "The burden of establishing abuse of discretion is on appellant and a strong showing is required to establish it." *State v. Faulkner*, 1 Haw.App. 651, 654, 624 P.2d 940, 943 (1981). An abuse of discretion occurs only if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Merino,* 81 Hawai'i at 211, 915 P.2d at 685; *Gomes,* 79 Hawai'i at 36, 897 P.2d at 963; *Adams,* 76 Hawai'i at 411, 879 P.2d at 516; *Faulkner,* 1 Haw.App. at 654, 624 P.2d at 943.

■ On November 14, 1985, when Nguyen entered his plea of "no contest" to his cocaine-related charge of Promoting a Dangerous Drug in the Third Degree, HRPP 11(c) and (d) required the circuit court to do the following:

Rule 11. PLEAS.

. . . .

(c) Advice to Defendant. The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

(1) the nature of the charge to which the plea is offered; and

(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

(d) Insuring that the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

Nguyen does not dispute that the circuit court fulfilled the express requirements of Rule 11 as it existed on November 14, 1985. However, Nguyen contends that when he subsequently moved to withdraw his "no contest" plea in 1993 and told the circuit court he had not known that his "no contest" plea might eventually result in deportation, the circuit court abused its discretion by finding that Nguyen failed to demonstrate manifest injustice and by refusing to apply HRS § 802E–3 retrospectively.

■ Courts need not inform defendants prior to accepting their guilty or nolo contendere pleas about every conceivable collateral effect that a conviction might have. *Cf. Reponte v. State,* 57 Haw. 354, 364, 556 P.2d 577, 584 (1976) (rejecting an appellant's argument that his burglary conviction should be vacated because the court had not informed him that by pleading guilty he would no longer be allowed to hold ammunition or a gun). Accordingly, it is the general rule that, absent a rule or statute, a court has no duty to warn defendants pleading guilty or "no contest" about the possibility of deportation as a collateral consequence of conviction. *Cf. id.* at 364 n. 10, 556 P.2d at 584 n. 10 (citing *Tafoya v. State,* 500 P.2d 247 (Alaska 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973)).[3]

---

**3.** *See also People v. Ford,* 86 N.Y.2d 397, 633 N.Y.S.2d 270, 273–74, 657 N.E.2d 265, 267–68 (1995); *State v. Figueroa,* 639 A.2d 495, 499 (R.I.1994); *Williams v. State,* 641 N.E.2d 44, 47 (Ind.Ct.App.1994); *State v. Vasquez,* 889 S.W.2d 588, 589–90 (Tex.Ct.App.1994); *State v. Dalman,* 520 N.W.2d 860, 863 (N.D.1994); *State v. McFadden,* 884 P.2d 1303, 1305 (Utah Ct.App. 1994), *cert. denied,* 892 P.2d 13 (Utah 1995); *State v. Christie,* 655 A.2d 836, 838, (Del.Super.Ct.1994), *affirmed,* 655 A.2d 306 (Del.1994); *State v. Baeza,* 174 Wis.2d 118, 496 N.W.2d 233, 236 (1993); *State v. Banuelos,* 124 Idaho 569, 861 P.2d 1234, 1237–38 (1993), *cert. denied,* 510 U.S. 1098, 114 S.Ct. 936, 127 L.Ed.2d 227 (1994); *State v. Odubanjo,* 80 Ohio App.3d 329, 609 N.E.2d 207, 210 (1992), *abrogated on other grounds by State v. Jenkins,* 1995 WL 248526 (Ohio Ct.App.1995); *State v. Hasnan,* 806 S.W.2d 54, 56 (Mo.Ct.App.1991), *disagreed with on other grounds by State v. Reynolds,* 819 S.W.2d 322 (Mo.1991); *Alpizar v. United States,* 595 A.2d 991, 994 (D.C.1991); *State v. Vera,* 159 Ariz. 237, 766 P.2d 110, 112 (1989); *Carson v. State,* 755 P.2d 242, 244 (Wyo.1988); *Matter of Peters,* 50 Wash.App. 702, 750 P.2d 643, 645 (1988); *State v. Ginebra,* 511 So.2d 960, 960–61 (Fla.1987), *superseded by rule, In re Amendments to Florida Rules of Criminal Procedure,* 536 So.2d 992 (Fla. 1988); *State v. Chung,* 210 N.J.Super. 427, 510 A.2d 72, 75 (1986); *Daley v. State,* 61 Md.App. 486, 487 A.2d 320, 322 (1985).

The New York Court of Appeals recently addressed this issue when an alien defendant had pled guilty to manslaughter without any warning about the possibility of deportation:

Manifestly, a criminal court is in no position to advise on all the ramifications of a guilty plea personal to a defendant. Accordingly, the courts have drawn a distinction between consequences of which the defendant must be advised, those which are "direct", and those of which the defendant need not be advised, "collateral consequences." A direct consequence is one which has a definite, immediate and largely automatic effect on defendant's punishment. Illustrations of collateral consequences are loss of the right to vote or travel abroad, loss of civil service employment, loss of a driver's license, loss of the right to possess firearms or an undesirable discharge from the Armed Services. The failure to warn of such collateral consequences will not warrant vacating a plea because they are peculiar to the individual and generally result from the actions taken by agencies the court does not control.

Deportation is a collateral consequence of conviction because it is a result peculiar to the individual's personal circumstances and one not within the control of the court system. Therefore, our Appellate Division and the Federal courts have consistently held that the trial court need not, before accepting a plea of guilty, advise a defendant of the possibility of deportation.

*People v. Ford,* 86 N.Y.2d 397, 633 N.Y.S.2d 270, 273–74, 657 N.E.2d 265, 267–68 (N.Y. 1995) (citations omitted); *accord, Fruchtman v. Kenton,* 531 F.2d 946, 949 (9th Cir.1976) (holding that an alien defendant need not be advised of deportation as a consequence of a guilty plea, because deportation is a sanction controlled by a federal agency over which a trial judge has neither control nor responsibility), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976).[4] The same rationale applies to defendants who plead nolo contendere or "no contest" without any warning about the collateral consequence of possible deportation. *State v. Figueroa,* 639 A.2d 495, 499 (R.I.1994) ("There is no duty to inform alien defendants [pleading nolo contendere] of the collateral consequence of possible or certain deportation.").

Nevertheless, Nguyen correctly asserts that a statute, HRS Chapter 802E, currently requires courts, prior to accepting a plea of nolo contendere, to advise defendants that, if they are not citizens of the United States, their convictions "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." HRS § 802E–2 (1993).[5] Effective September 2, 1988, an amendment to HRPP Rule 11(c)(5) also requires courts to determine that such defendants understand the collateral consequence of possible deportation.[6] "If

**4.** *Cf. United States v. Del Rosario,* 902 F.2d 55, 59 (D.C.Cir.1990), *cert. denied,* 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *United States v. Montoya,* 891 F.2d 1273, 1293 (7th Cir.1989); *United States v. Yearwood,* 863 F.2d 6, 8 (4th Cir.1988); *United States v. Romero–Vilca,* 850 F.2d 177, 179 (3d Cir.1988); *United States v. Gavilan,* 761 F.2d 226, 228 (5th Cir.1985); *Downs–Morgan, v. United States,* 765 F.2d 1534, 1538 (11th Cir.1985); *United States v. Santelises,* 509 F.2d 703, 704 (2d Cir.1975).

**5.** HRS § 802E–2 (1993) states as follows:

802E–2 Court advisement concerning alien status required. Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:

If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged

may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section.

**6.** HRPP Rule 11(c)(5), as amended on September 2, 1988, currently requires the following:

Rule 11. PLEAS.

. . . .

(c) Advice to Defendant. The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

. . . .

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences

the court fails to advise the defendant as required by section 802E–2 and the defendant shows that conviction of the offense to which the defendant pleaded . . . nolo contendere may have the consequence[ ] for the defendant of deportation, . . . the court shall vacate the judgment[.]" HRS § 802E–3 (1993).[7]

However, the Hawai'i legislature enacted HRS Chapter 802E through Act 382 on June 15, 1988, over two and a half years after Nguyen had already entered his "no contest" plea. 1988 Haw.Sess.L.Act 382, §§ 1–3 at 749–50. To apply HRS Chapter 802E to Nguyen's "no contest" plea on November 14, 1985, would require retrospective operation.

In similar situations, other jurisdictions have not allowed retrospective operation of statutes that required courts to advise alien defendants about the collateral consequence of possible deportation, primarily because of three reasons: (1) before the enactment of such statutes, it was the general rule that courts have had no duty to warn alien defendants about possible deportation; (2) some legislatures have intended such statutes to apply only prospectively; and (3) because courts have been under no duty to warn defendants about deportation prior to the enactment of such statutes, retrospective operation of these statutes would suddenly expose large numbers of past convictions to collateral attack.

For example, the District of Columbia Court of Appeals refused to retrospectively apply District of Columbia (D.C.) Code § 16–713, a law that required courts to admonish defendants about possible deportation whenever defendants pled guilty, even though the Council of the District of Columbia (Council) had enacted D.C.Code § 16–713 one day before an appellant received his sentence. *Al-*

*pizar v. United States,* 595 A.2d 991 (D.C. 1991). When the appellant had pled guilty to armed robbery on January 25, 1983, the court had not warned him that his guilty plea might result in deportation, but a little more than one month later, on March 10, 1983, the Council enacted D.C.Code § 16–713, which "require[d] the trial court to vacate any guilty plea upon request and without regard to any other circumstances surrounding the entry of the plea, if it was entered by a defendant who risked deportation but was not so informed by the court as required by the statute." *Id.* at 993. The following day, on March 11, 1983, the appellant received his sentence without any admonishment about possible deportation. Two years later, the appellant received notice from the Department of Justice that he was subject to deportation as a result of his convictions. In response, the defendant filed a motion to vacate his guilty plea pursuant to D.C.Code § 16–713. Reviewing a lower court's denial of the motion, the *Alpizar* court noted that "[c]onstruing the statute as applying to guilty pleas entered before the statute was enacted would have far reaching consequences for the criminal justice system and possibly for immigration proceedings based upon those convictions that would then be vacated." *Id.* at 993. Furthermore, the *Alpizar* court's "review of the text of the statute as well as the legislative history reveal[ed] no . . . legislative intent" to apply the statute retrospectively. *Id.* at 994.

Therefore, only a defendant who had the statutorily created right to receive the advisement can invoke the remedy provided for the deprivation of that right. Since there is no indication that the Council intended to confer the right retrospectively, appellant was never deprived of the right to receive that advisement. Accordingly,

of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

7.  HRS § 802E–3 (1993) states as follows:
     § 802E–3 Failure to advise; vacation of judgment. If the court fails to advise the defendant as required by section 802E–2 and the defendant shows that conviction of the offense to which the defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from ad-

mission to the United States, or denial of naturalization pursuant to the laws of the United States, on defendant's motion, the court shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.

the statutorily created remedy is unavailable to him. Thus, § 16–713(b) provides no basis, in and of itself, for permitting appellant to withdraw his plea of guilty. *Id.* at 994.

Although an Ohio appellate court vacated and remanded part of an appellant's sentence on other grounds in *State v. Odubanjo*, 80 Ohio App.3d 329, 609 N.E.2d 207, 209 (1992), *abrogated on other grounds by State v. Jenkins*, 1995 WL 248526 (Ohio Ct.App.1995), the *Odubanjo* court specifically rejected the "appellant's contention that he was prejudiced in his guilty pleas because he was not advised of the possibility of his deportation pursuant to R.C. 2943.031," a statute providing "that the court must ask a defendant if he is a citizen of the United States, and if he is not, then the court is required to" advise the defendant that pleading guilty or "no contest" might subsequently result in, among other things, deportation. The date of the appellant's indictment for various offenses was June 5, 1989, and the date of the appellant's guilty pleas was July 21, 1989. *Odubanjo*, 609 N.E.2d at 208. Although the appellant did not receive his sentence until one year later on July 28, 1990, *id.*, the effective date for R.C. 2943.031 "was October 2, 1989, subsequent to the date of appellant's arrest and indictment and, therefore, [R.C. 2943.031] was not controlling." *Id.* at 209. The *Odubanjo* court concluded that "we cannot hold the court accountable for the advisement required in R.C. 2943.031 because of the date of its effectiveness[.]" *Id.* at 210. Thus, "[t]he court was not responsible under the dictates of R.C. 2943.031 for informing appellant of the deportation consequences of his guilty plea[.]" *Id.*

When an appellant in Texas applied for a writ of habeas corpus and writ of audita querela on the ground that a court had not warned him that his guilty plea might subsequently result in deportation, a Texas appellate court reversed a lower court's decision to grant both writs, even though article 26.13(a)(4) of "the Code of Criminal Procedure [currently] requires that before accepting a guilty plea, the court must admonish the defendant that a plea of guilty or nolo contendere may result in deportation or the denial of naturalization." *State v. Vasquez*, 889 S.W.2d 588, 589 (Tex.Ct.App.1994). The appellant had pled guilty to a felony in 1981, but the statutory admonishment pursuant to article 26.13(a)(4) "was not required until 1985, four years after [the appellant] entered his guilty plea." *Id.* Unwilling to apply the article 26.13(a)(4) retrospectively, the *Vasquez* court held that the appellant had "received all that was statutorily required" at the time of his guilty plea, *id.*, and thus, the trial court had committed reversible error by granting both writs. *Id.* at 590–92.

■ In Hawai'i, "[n]o law has any retrospective operation unless otherwise expressed or obviously intended." HRS § 1–3 (1993). On the other hand, "HRS § 1–3 is only a rule of statutory construction and where the legislative intent may be ascertained, it is no longer determinative." *State v. Von Geldern*, 64 Haw. 210, 213, 638 P.2d 319, 322 (1981). "Our task then is to ascertain whether there is an expression or obvious intendment that the amendment was to have 'any retrospective operation.'" *Graham Const. Supply, Inc. v. Schrader Const.*, 63 Haw. 540, 546, 632 P.2d 649, 653 (1981).

When enacting HRS Chapter 802E through Act 382, the Hawai'i legislature specifically stated that Act 382 would *not* operate retrospectively:

> The provisions of this Act shall apply only to pleas accepted after the effective date of this Act. Nothing in this Act shall require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid with respect to pleas accepted prior to the effective date of this Act. Nothing in this Act, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea.

1988 Haw.Sess.L.Act 382, § 2 at 750. Thus, the circuit court's refusal to apply HRS Chapter 802E retrospectively to Nguyen's 1986 conviction was clearly consistent with the legislative intent of HRS Chapter 802E.

Nguyen contends that, although the Hawai'i legislature intended that HRS Chapter 802E was not to operate retrospectively, it

was still manifestly unjust for the circuit court to accept Nguyen's "no contest" plea in 1985 without warning him about the possible consequence of deportation. However, as already stated, without a court rule or a statute, the circuit court had no duty to warn Nguyen that his "no contest" plea might have the collateral consequence of deportation. *Cf. Reponte*, 57 Haw. at 364 n. 10, 556 P.2d at 584 n. 10 (citing *Tafoya v. State*, 500 P.2d 247 (Alaska 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973)).[8]

Because the Hawai'i legislature specifically intended that HRS Chapter 802E shall apply only to pleas accepted after June 15, 1988, we are not persuaded to give retrospective operation to HRS Chapter 802E. Only defendants who had the statutorily created right to receive a deportation advisement at the time of their pleas can invoke, as a matter of absolute entitlement, the remedy for the deprivation of that right pursuant to HRS Chapter 802E. Under the circumstances of this case, however, the circuit court did not deprive Nguyen of any right when it accepted Nguyen's "no contest" plea in 1985 without advising him about the collateral consequence of possible deportation, and, thus, the subsequent enactment of HRS Chapter 802E more than two years later in 1988 provided no basis for requiring the circuit court to subsequently permit Nguyen to withdraw his "no contest" plea.

Nguyen further asserts that the circuit court committed reversible error by failing to exercise its "statutory discretion" when it denied his motion to withdraw his "no contest" plea. In support of his contention, Nguyen notes that, although the Hawai'i legislature stated that HRS Chapter 802E would not apply retrospectively, the Hawai'i legislature also stated that "[n]othing in this Act, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a

defendant to withdraw a plea." 1988 Haw. Sess.L.Act 382, § 2 at 750.

While Nguyen is correct in his assertion that the circuit court had discretion to grant his motion to withdraw his "no contest" plea, Nguyen is not correct in his assertion that the circuit court failed to exercise its "statutory discretion" by denying Nguyen's motion. The record shows that, on September 15, 1993, after reviewing the exhibits and arguments from both sides, the circuit court denied Nguyen's motion not only because HRS Chapter 802E does not have retrospective operation, but also because the circuit court specifically found that Nguyen had failed to make a sufficient showing of manifest injustice. *See supra* at 285–286, 916 P.2d at 695–696. Indeed, in the circuit court's subsequent written order, issued on October 15, 1993, the circuit court reiterated that Nguyen failed to demonstrate "manifest injustice" sufficient to otherwise convince the circuit court to grant Nguyen's motion in the exercise of the circuit court's discretion. *See supra* at 286, 916 P.2d at 696. Contrary to what Nguyen suggests, the record shows that the circuit court did in fact exercise its "statutory discretion"; the circuit court simply exercised its discretion and reached a conclusion that Nguyen did not like.

█ Nguyen also asserts that the circuit court abused its discretion when it denied his motion to withdraw his "no contest" plea because, Nguyen claims, the circuit court allegedly did not take into consideration that the United States government was in the process of deporting Nguyen. However, a review of the record shows that Nguyen's assertion is without merit, because, at the hearing for his motion to withdraw his "no contest" plea, Nguyen introduced into evidence a copy of the "Order to Show Cause and Notice of Hearing" showing that the United States Department of Justice was

---

8. In fact, at the time of the 1988 enactment of Act 382, the Hawai'i legislature was acutely aware that Hawai'i law did not require courts to inform alien defendants that their pleas of guilty or "no contest" might result in deportation. *See* Stand.Comm.Rep. No. 533–88, in 1988 House Journal, at 1040 ("At present, Hawaii's laws do not require that aliens be informed that entering a plea of guilty or no contest may result in deportation or denial of naturalization."); *see also* Stand.Comm.Rep. No. 2546, in 1988 Senate Journal, at 1078 ("Currently, the courts are not required to inform or warn aliens that entry of an acceptance of guilty plea or plea of nolo contendere may result in deportation, exclusion from the United States or denial of naturalization.").

considering the possibility of deporting Nguyen. Additionally, during oral arguments for the motion, counsel for Nguyen specifically informed the circuit court about Nguyen's pending deportation proceeding. The circuit court was clearly aware that Nguyen was in danger of being deported as a result of his "no contest" plea, and thus, the circuit court was able to take this fact into consideration when the circuit court came out with its finding and final disposition.

■■■ While Nguyen's predicament might justifiably evoke sympathy, under Hawai'i law Nguyen was entitled to withdraw his plea of "no contest" after imposition of sentence only upon a showing of manifest injustice. *State v. Cornelio*, 68 Haw. 644, 646, 727 P.2d 1125, 1126–27 (1986). Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea. *Cf. Reponte*, 57 Haw. at 362, 556 P.2d at 583 (a plea of guilty is not constitutionally acceptable unless made voluntarily and with a full understanding of the consequences); *State v. James*, 176 Wis.2d 230, 500 N.W.2d 345, 348 (Wis.Ct.App.1993) (a "manifest injustice" occurs when a defendant makes a plea involuntarily, or without knowledge of the charge, the consequences of the plea or that the sentence actually imposed could be imposed), *review denied*, 505 N.W.2d 138 (Wis.1993); *Commonwealth v. Holbrook*, 427 Pa.Super. 387, 629 A.2d 154, 158 (1993) ("To establish manifest injustice, [the defendant] must show that his plea was involuntary or was given without knowledge of the charge."), *appeal denied*, 536 Pa. 620, 637 A.2d 280 (1993). There is no manifest injustice when a trial court has made an affirmative showing through an on-the-record colloquy between the court and the defendant which shows that the defendant had a full understanding of what his or her plea connoted and its direct consequences. *Cornelio*, 68 Haw. at 646–47, 727 P.2d at 1127. The on-the-record colloquy on November 14, 1985, between the circuit court and Nguyen shows that the circuit court determined that Nguyen made his plea voluntarily, and that Nguyen had a

full understanding of what his "no contest" plea connoted and its direct consequences. *See supra* at 282–285, 916 P.2d at 692–695. Thus, the on-the-record colloquy supports the circuit court's finding that Nguyen failed to demonstrate manifest injustice that would warrant granting the withdrawal of his "no contest" plea.

Moreover, regardless of whether we completely agree with the circuit court's finding, we would not disturb the circuit court's denial of Nguyen's motion to withdraw his plea unless the record showed that the circuit court had abused its discretion by clearly exceeding the bounds of reason or disregarding rules or principles of law or practice to the substantial detriment of Nguyen. *Merino*, 81 Hawai'i at 211, 915 P.2d at 685; *Gomes*, 79 Hawai'i at 36, 897 P.2d at 963; *Adams*, 76 Hawai'i at 411, 879 P.2d at 516; *Faulkner*, 1 Haw.App. at 654, 624 P.2d at 943. In denying Nguyen's motion to withdraw his "no contest" plea, the circuit court acted within the bounds of reason and followed the relevant law. Considering the record and the relevant law, we hold the circuit court did not abuse its discretion by denying Nguyen's motion to withdraw his "no contest" plea.

### B. Plain Error

■■■ Finally, Nguyen contends that the circuit court committed plain error by accepting his initial "no contest" plea in 1985 without warning him about the collateral consequence of possible deportation.[9] Pursuant to HRPP Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This court's power to deal with plain error is one to be exercised with caution because the plain error rule is a departure from the position usually presupposed by the adversary system that parties must look to counsel for protection and must bear the cost of counsel's mistakes. *Raines v. State*, 79 Hawai'i 219, 226, 900 P.2d 1286, 1293 (1995). Justice Harlan Fiske Stone delineated the primary components of the plain error rule:

9. Nguyen does not assert "plain error" with respect to the circuit court's order denying Nguyen's motion to withdraw his plea of "no contest," issued October 15, 1993.

In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

*United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) (citations omitted); *accord, State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 675–76 (1988). Thus, the decision to take notice of plain error must turn on the facts of the particular case to correct errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Fox,* 70 Haw. at 56, 760 P.2d at 676.

It is too late for Nguyen to raise the issue of plain error with respect to his "no contest" plea in 1985, the final judgment from which was entered on January 20, 1986. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b) requires that "[i]n a criminal case, ... the *notice of appeal* by a defendant *shall be filed* in the circuit court or district court *within 30 days* after the entry of the judgment or order appealed from." (Emphasis added). Nguyen's deadline for appealing his 1986 conviction has long since passed.

"[W]e have permitted belated appeals under two sets of circumstances, namely, when (1) defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal, or (2) the lower court's decision was unannounced and no notice of the entry of judgment was ever provided." *Grattafiori v. State,* 79 Hawai'i 10, 13–14, 897 P.2d 937, 940–41 (1995). Nguyen has not asserted either that his counsel ineffectively failed to pursue an appeal within thirty days of his 1986 conviction or that the circuit court failed to announce and give notice of its judgment convicting Nguyen on January 20, 1986. Therefore, neither of the two exceptions for belated appeals applies to the instant case.

Nevertheless, even if Nguyen's 1986 conviction were presently on appeal before us, we would detect no error that rises to a level sufficient to invoke the plain error rule. Our power to deal with plain error is a power to be exercised sparingly and with caution.

*Fox,* 70 Haw. at 57, 760 P.2d at 676. As stated, when Nguyen entered his "no contest" plea on November 14, 1985, Hawai'i courts were under no duty to advise defendants that pleading "no contest" might have the collateral consequence of possible deportation. *Cf. Reponte,* 57 Haw. at 364 n. 10, 556 P.2d at 584 n. 10. In accepting Nguyen's "no contest" plea in 1985 without warning Nguyen about the collateral consequence of possible deportation, the circuit court's errors, if any, were not obvious, nor did they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings under the law at that time. Therefore, in addition to being untimely, Nguyen's assertion of plain error with respect to his 1986 conviction lacks merit.

### III. *CONCLUSION*

The circuit court found that Nguyen failed to demonstrate manifest injustice that would warrant the withdrawal of Nguyen's "no contest" plea. After reviewing the record and relevant law, we hold that the circuit court did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to the substantial detriment of Nguyen, and, thus, the circuit court did not abuse its discretion by denying Nguyen's motion to withdraw his "no contest" plea. Accordingly, we affirm.