**Electronically Filed
Supreme Court
SCWC-14-0001195
15-MAR-2018
09:49 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

KRISTOPHER KEALOHA,
Petitioner/Defendant-Appellant
(CAAP-14-1195 and CAAP-14-1196;
CR. NOS. 12-1-0224 and 12-1-0387)

and

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

KRISTOPHER KANE KEALOHA,
Petitioner/Defendant-Appellant
(CAAP-14-1197; CR. NO. 13-1-0813)

_____

SCWC-14-0001195

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS

MARCH 15, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

The issue at the core of this appeal is whether courts must advise defendants that restitution is a possible consequence of conviction before accepting a guilty or no contest plea. Petitioner Kristopher Kealoha ("Kealoha") appeals the Circuit Court of the First Circuit's ("circuit court") Judgments of Conviction and Sentence in three criminal cases.[1] In a Hawai'i Rules of Penal Procedure ("HRPP") Rule 11 plea agreement with the State of Hawai'i ("State") to which the circuit court agreed to be bound, Kealoha agreed to plead guilty in all three cases, provided that he would be sentenced to serve concurrent terms of imprisonment, the longest of which would be five years.

On appeal, Kealoha asserts the circuit court violated that agreement by also sentencing him to pay restitution. He argues he should be resentenced in conformity with his plea agreement, without being required to pay restitution. He alternatively argues he should be allowed to withdraw his guilty plea. The Intermediate Court of Appeals ("ICA") disagreed and affirmed the circuit court in its Summary Disposition Order, State v. Kealoha, Nos. CAAP-14-0001195, CAAP-14-0001196, CAAP-14-0001197, at 2 (App. Apr. 28, 2017) (SDO).

---

[1]    The Honorable Dexter D. Del Rosario presided.

On certiorari, Kealoha asserts that the ICA erred in affirming the convictions and not granting him the relief he requested. His appellate counsel also requests that we review the ICA's July 17, 2017 Order Approving in Part and Denying in Part Defendant-Appellant's Request for Attorney's Fees and Costs ("ICA's July 17, 2017 order") to the extent it reduced his request for attorney's fees.

For the reasons stated below, we hold that because restitution is part of the "maximum penalty provided by law" and is a direct consequence of conviction, defendants must be appropriately advised and questioned in open court regarding their understanding of this possibility before a court can accept their pleas. In so holding, we overrule in part the ICA's opinion in State v. Tuialii, 121 Hawaiʻi 135, 214 P.3d 1125 (App. 2009), cert. denied, 2010 WL 60962. Although the circuit court did not conduct a proper colloquy in Kealoha's case, because Kealoha never filed an appropriate motion in the circuit court, we affirm his convictions without prejudice to him filing a HRPP Rule 40 petition in the circuit court. We also partially grant appellate counsel's request for an increased award of attorney's fees for his work before the ICA.

3

## II. Background

### A. Circuit Court Proceedings

From 2012 to 2013, Kealoha was charged with a number of offenses in three separate criminal cases. On February 10, 2012, in Cr. No. 12-1-224, Kealoha was charged with one count of Assault in the Second Degree, in violation of HRS § 707-711 (1)(a) and/or §707-711(1)(b) and/or §707-711(1)(d).[2] On March 12, 2012, in Cr. No. 12-1-387, Kealoha was charged with one count of each of the following: Unauthorized Control of a Propelled Vehicle in violation of HRS § 708-836, Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712-1246, Promoting a Detrimental Drug in the Third Degree in violation of HRS § 712-1249, Resisting Arrest in violation of HRS § 710-1026(1)(a), Driving Without a License in violation of HRS § 286-102, Accidents Involving Bodily Injury in violation of HRS § 291C-12.6, and Resisting an Order to Stop a Motor Vehicle in violation of HRS § 710-1027.[3] On June 7, 2013, in Cr. No. 13-1-813, Kealoha was charged with one count of Assault in the Third Degree, in violation of HRS § 707-712(1)(a).[4]

---

[2]    This case was designated as CAAP-14-1195 on appeal.

[3]    This case was designated as CAAP-14-1196 on appeal.

[4]    This case was designated as CAAP-14-1197 on appeal.

4

**1.    Change of plea hearing**

On May 28, 2014, Kealoha pled guilty to all counts in all three cases.  At the change of plea hearing, Kealoha indicated that he would prefer to go to trial if the court did not bind itself to his plea agreement with the State:

> [THE COURT]:  You want to plead guilty in all cases as to all counts?
> [THE DEFENDANT]:  If there's a deal, Your Honor. If this is a Rule 11, you know what I mean? I don't understand exactly everything. But if -- if I'm pleading guilty and it's a Rule 11 and everybody going give me one open 5 max, that's it, for everything, then, yeah. Sure, I like take that deal. But, if it's not, Your Honor, I going go trial.

The circuit court then confirmed the existence and terms of the plea agreement with Kealoha's counsel and the State:

> THE COURT:  What is the plea agreement?
> [DEFENSE COUNSEL]:  Everything concurrent.
> THE COURT:  And he gets the open term and everything concurrent?
> [DEFENSE COUNSEL]:  Yeah.
> THE COURT:  I will bind myself to this agreement.
> THE DEFENDANT:  The open term of 5 years max, that's it, for everything?
> THE COURT:  And I'm going to make it altogether concurrent.
> THE DEFENDANT:  Right.
> . . . .
>
> THE DEFENDANT:  Judge -- Your Honor, again, I know you the top guy on this, but is the prosecutor, everybody on the same page, you know what I mean?
> THE COURT:  Hang on.
> [THE STATE]:  I'm sorry, Your Honor.
> THE COURT:  Go ahead.
> [THE STATE]:  And I did -- I should have clarified. I did orally commit myself to this. I haven't signed, but we did -- we have discussed this, and I -- I have agreed.
> THE COURT: Okay.
> . . . .
>
> [THE COURT:]  He just said he's agreed to the open 5.
> [THE DEFENDANT:]  And that's it? Max? Open 5 max for all charges concurrent, again?
> [THE COURT:]  For all Class C felonies, I going give you 5 years, and I going have you serve it concurrently, at the same time.

Kealoha orally confirmed that he signed the change of plea form for each case. The change of plea forms contained the following boilerplate language in paragraph six:

> 6. I understand that the court may impose any of the following penalties for the offense(s) to which I now plead: the maximum term of imprisonment, any extended term of imprisonment, and any mandatory minimum term of imprisonment specified above; consecutive terms of imprisonment (if more than one charge); restitution; a fine; a fee and/or assessment; community service; probation with up to one year of imprisonment and other terms and conditions.

Attached to each of the change of plea forms were documents prepared by counsel labelled "Exhibit A," which contained a brief admission of guilt with respect to each charge and a statement that Kealoha reviewed and understood the contents of the change of plea form. When asked whether he reviewed the forms with his attorney, Kealoha replied, "[h]e read it to me, Your Honor. Yes." Kealoha confirmed that he understood what was read to him, and that he understood the charges against him.

The court explained, and Kealoha stated he understood, that based on the plea agreement Kealoha would be sentenced to a five-year term of imprisonment in Cr. No. 12-1-387, a five-year term in Cr. No. 12-1-224, and a one-year term in Cr. 13-1-813. For the non-felony charges in Cr. 12-1-387, the court indicated that it would impose lesser jail sentences to run concurrently to the five-year terms for the felony charges, and Kealoha stated that he understood. Finally, Kealoha acknowledged that

6

he still wanted to plead guilty, and acknowledged that he would be giving up the right to a trial, stating: "Your Honor, as long as it's a 5 max, I'm good.  I'm good with that."

Restitution was not discussed at the change of plea hearing.

### 2.    Sentencing hearing

The sentencing hearing was held on August 20, 2014. After Kealoha addressed the court, the circuit court confirmed the terms of the plea agreement with his counsel:

> THE COURT:  My understanding is that the plea agreement calls for an open term of incarceration to be served concurrently with each other.
> [DEFENSE COUNSEL]:  Yes, everything concurrent that hadn't -- some of them have been served already, too.

The State did not offer any corrections to these statements.  In addition to the terms of imprisonment, however, the court then also ordered Kealoha to pay restitution in the amount of $633.33 for Cr. No. 12-1-224 and $4,140.05 for Cr. No. 12-1-387.  No restitution was ordered in Cr. No. 13-1-813.[5]

After the circuit court announced its sentence, Kealoha expressed concerns about being able to pay restitution:

> THE DEFENDANT:  I don't know how I going -- excuse me, Your Honor, but I don't know how I going pay this.  I cannot just do time instead of restitution or just make more --
> THE COURT:  You can talk to your lawyer about judgments.
> THE DEFENDANT:  You know what I mean?
> [DEFENSE COUNSEL]:  We talked about that.
> THE DEFENDANT:  This guy doesn't really like me that much.

---

[5]    The circuit court waived the Crime Victim Compensation Fee in each of the three cases.

> THE COURT:  Mr. Kealoha, you cannot pay what you don't
> have.
> THE DEFENDANT:  That's what I'm saying.  I feel I cannot
> pay what I don't have, so would just be more logical if I
> just do it with my time.  You know what I mean?
> [DEFENSE COUNSEL]:  You're doing the time either way so --
> THE DEFENDANT:  Hold on, hold on, hold on.  That way, one
> day -- 'cause where I starting today, I going get my life
> on track, I go outside, get one job.  You know what I mean?
> I just like be free from anything that going hinder my life
> in the future.  You know what I'm saying, right?
> Understand?
> THE COURT:  You can talk to [defense counsel].
> THE DEFENDANT:  Again, I reiterate, this guy doesn't like
> me.
> [DEFENSE COUNSEL]:  Whatever.

The circuit court entered a Judgment of Conviction and Sentence in each of Kealoha's cases on August 20, 2014.  Counsel subsequently withdrew as Kealoha's attorney,[6] and substitute counsel was appointed for appeal.  Kealoha did not file any post-sentence motion with the circuit court to set aside the restitution order or withdraw his plea.

---

[6]  Counsel asserted in his motion to withdraw his belief that Kealoha's claims on appeal were frivolous.  Under Hawai'i law, this basis for withdrawal was inappropriate. In Anders v. California, 386 U.S. 738 (1967), the United States Supreme Court described with approval what is now known as an "Anders Brief," a brief that identifies any appealable issues but allows an attorney to move to withdraw as counsel and advise the court that his or her client's claims are frivolous.  In re Mohr, 97 Hawai'i 1, 7, n.4, 32 P.3d 647, 653, n.4 (2001) (citing Anders, 386 U.S. at 744).  We disapprove of so-called "Anders briefs."  Mohr, 97 Hawai'i at 7, 32 P.3d at 653.  Rather, "[w]e think the better policy is to require counsel to remain an advocate for the client," and leave evaluation of the frivolity of claims to the court.  Id.

Even if arguments on appeal are frivolous from counsel's perspective, however, we have held that "this court will not sanction a court-appointed attorney if, after taking into account the totality of the circumstances, arguments raised reflect zealous advocacy on behalf of the client."  Id.; see Maddox v. State, 141 Hawai'i 196, 204, 407 P.3d 152, 160 (2017) (quoting Mohr, 97 Hawai'i at 7, 32 P.3d at 653) (reiterating that counsel should remain an advocate for the client and has a duty to pursue an appeal, even if frivolous, if the criminal defendant so chooses).

**B.    ICA Proceedings**

On April 10, 2015, Kealoha's three cases were consolidated before the ICA.[7]  In his opening brief, Kealoha argued that restitution was never part of the plea agreement to which the circuit court agreed to be bound, and therefore he should be permitted to withdraw his guilty plea because he did not get the benefit of his bargain pursuant to the clear and unambiguous terms of the plea agreement.  Kealoha asserted that, because the change of plea form did not include any specific amounts of restitution to be imposed at sentencing, his guilty plea was not knowing, intelligent and voluntary as it deviated from the specific terms of the plea agreement.

In its answering brief, the State argued Kealoha filed no motion below to withdraw his guilty plea or to correct his "illegal" sentence on the ground his plea was infirm, and that Tuialii and HRPP Rule 32(d) required him to file such a motion within ten days after imposition of his sentence.  The State suggested that, like the defendant in Tuialii, Kealoha should have filed an HRPP Rule 40 motion after the ten-day period for an HRPP Rule 32(d) motion had elapsed.  The State contended that even if Kealoha had filed a motion to withdraw his plea, Tuialii holds that restitution is a collateral consequence of a plea, and therefore the trial court was not required to apprise him

---

[7]    The cases were consolidated under CAAP-14-1195.

9

that he could be subject to a free-standing order of restitution.

Additionally, the State asserted Kealoha understood and was actually properly advised of the consequences of his plea, based on the contents of the plea form and the exhibit attached to the plea form. Specifically, the State argued that paragraph six of the change of plea forms lists restitution as a possible penalty, among other penalties, and that Exhibit A to Kealoha's forms states that Kealoha reviewed and understood the change of plea forms, including paragraph 6.

In its SDO, the ICA held the circuit court did not abuse its discretion in ordering restitution because restitution was statutorily required under HRS §§ 706-646(2)(2014) and 706-605(7)(2014). Kealoha, SDO at 2 (citing State v. Feleunga, No. 30450, 3 (App. Nov. 15, 2011) (SDO) (finding no abuse of discretion by the circuit court when the plea agreement did not prohibit the imposition of restitution and restitution was required by HRS § 706-646)). The ICA determined that Kealoha and the State came to an agreement only as to terms of incarceration, based on the fact that Exhibit A to the change of plea forms did not mention any other possible penalties. Kealoha, SDO at 3. Further, the ICA noted that neither Kealoha nor his attorney "ever objected to the imposition of restitution as outside the plea agreement" at the sentencing hearing,

despite Kealoha's protestations about his "ability to pay a judgment of restitution, during which defense counsel stated that 'we talked about that,' indicating that it was not a surprise." Id.  For these reasons, the ICA concluded "the plea agreement did not expressly include restitution, but did not prohibit it and in fact noted the possibility of restitution being imposed." Id.

Relying on its decision in Tuialii, the ICA also concluded that restitution is a collateral consequence of a no contest or guilty plea, and therefore Kealoha's plea was not rendered involuntary by the circuit court's failure to warn him about restitution. Kealoha, SDO at 2 (citing Reponte v. State, 57 Haw. 354, 363-64, 556 P.2d 577, 584 (1976); Tuialii, 121 Hawai'i at 139, 214 P.3d at 1129).  The ICA's Judgments on Appeal were filed on July 26, 2017.

Kealoha's court-appointed appellate attorney subsequently filed a request for appellate attorney's fees and costs seeking $59.84 in costs and $7,425.00 in attorney's fees.  In its July 17, 2017 order, the ICA majority summarily granted counsel attorney's fees in the reduced amount of $5,000 and costs in the reduced amount of $54.90.[8]  Judge Ginoza dissented, stating that she would have granted the requested attorney's fees.

---

[8]     Appellate counsel's postage cost request of $4.94 was "denied without prejudice for failure to provide copies of receipts."

## C. Application for Certiorari

Kealoha seeks review of the ICA's SDO upholding the circuit court's order of restitution, as well as the July 17, 2017 ICA order with respect to the reduction of appellate counsel's fees for work before the ICA.

On the issue of restitution, Kealoha again asserts the circuit court deviated from the plea agreement by imposing restitution, and that, therefore his plea was not knowingly, intelligently, and voluntarily made. He argues "restitution is . . . a direct term of the sentence that is to be imposed upon a defendant pursuant to HRS § 706-605," and therefore Kealoha should have been informed, prior to the acceptance of his guilty plea, that restitution could be ordered.

As a remedy for the alleged improper inclusion of restitution in the sentence, he requests remand to the circuit court for resentencing or withdrawal of his guilty plea. Kealoha asks this court "to adopt a bright line rule that requires any restitution to be imposed at sentencing, be clearly included in either the change of plea form and/or the change of plea colloquy with a defendant."

With respect to his request for attorney's fees and costs before the ICA, appellate counsel asserts he was entitled to fees exceeding the statutory cap of $5000 for an appellate proceeding because he reviewed dockets and filed documents in

each of Kealoha's three cases before they were consolidated on appeal, and because he filed a motion for temporary relief in the consolidated case, among other things.  He argues that three separate appeals "would allow a statutory cap in each case of $5,000.00 for a total of $15,000.00,"[9] and therefore "the requested $7,425.00 was reasonable."

### III. Standards of Review

### A.   Questions of Law

Questions of law are reviewable de novo under the right/wrong standard of review.  State v. Jess, 117 Hawai'i 381, 391, 184 P.3d 133, 143 (2008).

### B.   Attorney's Fees

> This court reviews a lower court's award of attorneys' fees for abuse of discretion.  Allstate Ins. Co. v. Pruett, 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008) (citation omitted).  "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  Id. (quoting Lepere v. United Pub. Workers, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)).  In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999)).

Hart v. Ticor Title Ins. Co., 126 Hawai'i 448, 455, 272 P.3d 1215, 1222 (2012) (brackets in original).

---

[9]    Under HRS § 802-5(b) (2001), court-appointed counsel shall receive "reasonable compensation . . . based on the rate of $90 an hour[.]"  The maximum allowable fee for an appeal is $5,000.  HRS § 802-5(b)(4).  However, "[p]ayment in excess of any maximum . . . may be made whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of that court."  HRS § 802-5(b).

With respect to court-appointed counsel, this court has said that "[u]nder HRS § 802-5, requests for fees should be granted if the court certifies that the requesting attorney has met his or her burden to prove that the fees requested are for hours expended and that the hours expended were 'reasonable' for the services rendered." In re Mohr, 97 Hawai'i 1, 5, 32 P.3d 647, 651 (2001). When a fee request is reduced, the judge reducing the request is required to set forth reasons for the reduction, to enable appellate review of excess fee awards. In re Bettencourt, 126 Hawai'i 26, 32, 265 P.3d 1122, 1128 (2011).

## IV. Discussion

The transcript of Kealoha's change of plea hearing makes clear that the circuit court did not inform Kealoha that restitution could be imposed as part of his sentence. The question before us is whether the circuit court had an obligation to advise him of such a fact before accepting his guilty plea.

**A. Trial courts must advise defendants of the possibility of restitution being a part of their sentences before accepting a change of plea.**

For the reasons below, we conclude that a court accepting a guilty or no contest plea is required by the HRPP and our constitution to advise the defendant that restitution is a possible consequence of conviction.

1. **As part of the "maximum penalty provided by law," restitution must be part of the advisement and colloquy held in open court.**

Under HRPP Rule 11(c)(2)(2007),[10] the sentencing court is required to advise defendants orally in open court of, and ensure they understand, "the maximum penalty provided by law . . . which may be imposed for the offense to which the plea is offered" before the court may accept a guilty or no contest plea. In general, HRS § 706-605 (2016)[11] lays out the "Authorized disposition of convicted defendants" under the Hawaii Penal Code. In relevant part, HRS § 706-605 provides as follows:

> (1) Except as provided in . . . subsections (2) [Probation and Imprisonment], (6) [Compensation Fees], and (7) [Restitution] . . . the court may sentence a convicted defendant to one or more of the following dispositions:
>     (a) To be placed on probation[;]
>     (b) To pay a fine[;]
>     (c) To be imprisoned[;] or
>     (d) To perform services for the community[.]
>
> . . . .

---

[10] At the time Kealoha pled guilty, the 2007 version of HRPP Rule 11 was in effect. The language at issue here was not changed in the 2014 amendment of the rule. HRPP Rule 11(c)(2007) provided, in relevant part:

> The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the defendant understands the following:
> . . . .
> (2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered[.]

[11] The language relevant to this appeal became effective in 2006, and was not altered in the 2016 amendment to this section.

(7)  The court shall order the defendant to make restitution for losses as provided in section 706-646.  In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order.  The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.

(Emphasis added.)

At the time of Kealoha's change of plea, HRS § 706-646 (2013) provided as follows:

§706-646  **Victim restitution**.  (1)  As used in this section, "victim" includes any of the following:
     (a)  The direct victim of a crime including a business entity, trust, or governmental entity;
     (b)  If the victim dies as a result of the crime, a surviving relative of the victim as defined in chapter 351; or
     (c)  A governmental entity that has reimbursed the victim for losses arising as a result of the crime or paid for medical care provided to the victim as a result of the crime.

(2)  The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim.  The court shall order restitution to be paid to the crime victim compensation commission in the event that the victim has been given an award for compensation under chapter 351.  If the court orders payment of a fine in addition to restitution or a compensation fee, or both, the payment of restitution and compensation fee shall have priority over the payment of the fine, and payment of restitution shall have priority over payment of a compensation fee.

(3)  In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order.  The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.  The court shall specify the time and manner in which restitution is to be paid.  Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to:
     (a)  Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;
     (b)  Medical expenses; and

                    (c)     Funeral and burial expenses incurred as a
                    result of the crime.

               (4)  The restitution ordered shall not affect the right of
          a victim to recover under section 351-33 or in any manner
          provided by law; provided that any amount of restitution
          actually recovered by the victim under this section shall
          be deducted from any award under section 351-33.[12]

     Thus, pursuant to HRS §706-646(2), if a "victim" as defined

in subsection (1) requests restitution, or if the crime victim

compensation fund has provided the victim with an award,

---

[12]     Changes to the 2013 version of HRS § 706-646 from the current version
(2014 & Supp. 2017) are reflected below, but these amendments do not affect
our analysis in this case:

               **§706-646  Victim restitution.**  (1)  As used in this
               section, "victim" includes any of the following:
                    . . . .
                    (d) Any duly incorporated humane society or duly
               incorporated society for the prevention of cruelty to
               animals, contracted with the county or State to enforce
               animal-related statutes or ordinances, that impounds,
               holds, or receives custody of a pet animal pursuant to
               section 711-1109.1, 711-1109.2, or 711-1110.5; provided
               that this section does not apply to costs that have already
               been contracted and provided for by the counties or State.
                (2) . . .If the court orders payment of a fine in addition
               to restitution or a compensation fee, or both, the payment
               of restitution and compensation fee shall be made pursuant
               to section 706-651 [have priority over the payment of the
               fine, and payment of restitution shall have priority over
               payment of a compensation fee].
               (3) . . .The court shall specify the time and manner in
               which restitution is to be paid.  While the defendant is in
               the custody of the department of public safety, restitution
               shall be collected pursuant to chapter 353 and any court-
               ordered payment schedule shall be suspended. . . .
               (4) In any criminal proceeding before any court, all money
               deposited by the defendant as bail and not declared
               forfeited shall be applied toward payment of any
               restitution, fines, or fees ordered by the court in the
               same case, consistent with the priorities in subsection
               (2).
               (5) The restitution ordered shall not affect the right of a
               victim to recover under section 351-33 or in any manner
               provided by law; provided that any amount of restitution
               actually recovered by the victim under this section shall
               be deducted from any award under section 351-33.

(Emphases added.)

17

restitution for reasonable and verified losses <u>must</u> be ordered. Therefore, whether or not it is ultimately ordered, restitution is part of the "maximum penalty provided by law" and under HRPP Rule 11(c)(2) sentencing courts must advise defendants that restitution will be part of their sentences if the conditions of HRS § 706-646 are met.[13]

The Federal Rules of Criminal Procedure ("FRCrP") Rule 11 is explicitly in accord. Since 1985, FRCrP Rule 11 has included restitution in the court's mandatory plea advisements because "restitution is deemed an aspect of the defendant's sentence," according to the legislative history of the federal restitution statute. Commentary to Fed. R. Crim. P. Rule 11(c)(1) (1985) (citing S. Rep. No. 97-532, at 30-33 (1982) (Conf. Rep.)). Indeed, restitution is just one of several items of which federal courts are explicitly required to advise defendants under FRCrP Rule 11(b)(1) (2013):[14]

_____

[13] Other jurisdictions with rules similar to our HRPP Rule 11 have come to the same conclusion. <u>See</u>, <u>e.g.</u>, <u>Hayes v. State</u>, 137 P.3d 475, 481 (Idaho Ct. App. 2006) ("[R]estitution is a direct consequence of entering a guilty plea, of which a defendant should be informed pursuant to Idaho Criminal Rule 11(c) before his guilty plea is accepted."); <u>Keller v. State</u>, 723 P.2d 1244, 1246–47 (Wyo. 1986) ("From the viewpoint of a defendant in a criminal trial, payment of restitution is as much a penalty as payment of a fine. Both require the payment of money. Both are direct consequences of the plea. Both are punishments authorized by law. Restitution, therefore, is part of the "maximum possible penalty provided by law" for the purposes of Rule 15; and we hold that Rule 15(c) requires the trial judge to inform a defendant of the court's power to order restitution.").

[14] The Standing Committee on the HRPP may consider whether to amend HRPP Rule 11 to set forth similarly detailed requirements.

> (1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
> (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
> (C) the right to a jury trial;
> (D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;
> (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
> (F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;
> (G) the nature of each charge to which the defendant is pleading;
> (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;
> (I) any mandatory minimum penalty;
> (J) any applicable forfeiture;
> (K) the court's authority to order restitution;
> (L) the court's obligation to impose a special assessment;
> (M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);
> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and
> (O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

FRCrP Rule 11(b)(1)(A)-(O).

Although restitution is not specifically mentioned in HRPP Rule 11(c), our rule requires the court to address "the defendant personally in open court" to determine "that the defendant understands the following" four items:

> (1) the nature of the charge to which the plea is offered; and

19

> (2) the maximum penalty provided by law, and the maximum
> sentence of extended term of imprisonment, which <u>may be
> imposed for the offense to which the plea is offered</u>; and
>
> (3) that the defendant has the right to plead not guilty,
> or to persist in that plea if it has already been made; and
>
> (4) that if the defendant pleads guilty or no contest there
> will not be a further trial of any kind, so that by
> pleading guilty or no contest the right to a trial is
> waived.

HRPP Rule 11(c)(1)-(4) (emphasis added). Although we have held that there is no "ritualistic litany" to which sentencing courts must adhere in order to fulfil their duties under HRPP Rule 11, we have stated that we "cannot emphasize enough that all procedural components of HRPP Rule 11 should actually be complied with by . . . trial judges." State v. Cornelio, 68 Haw. 644, 646, 727 P.2d 1125, 1127 (1986). This includes the requirement that a trial court "address the defendant personally in open court" to ensure the defendant understands the "maximum penalty provided by law," which includes restitution.

In this case, the circuit court never orally addressed Kealoha in open court to determine whether he understood that restitution could be imposed as part of his sentence. Thus, there was no compliance with the requirement of HRPP Rule 11(c)(2).

The circuit court may have relied on the ICA's previous ruling in Tuialii that no oral advisement regarding restitution is required; in that case, the ICA held that the sentencing

court was not required by HRPP Rule 11(c)(2)(2007) to advise the

defendant that restitution could be imposed as part of his

sentence,  121 Hawai'i at 138-39, 214 P.3d at 1128-29, stating:

> The Circuit Court orally advised Tuialii that the maximum
> sentence that could be imposed for Theft in the First
> Degree was ten years of imprisonment and a fine of $20,000.
> Tuialii's written no-contest-plea form, which he confirmed
> he had read carefully and discussed with his attorney,
> states that he may be subject to restitution.  Indeed, in
> later arguing for reconsideration of his sentence, Tuialii
> argued that he was prepared to tender a check for $10,000
> for a restitution payment "and has been doing everything he
> can to get some money together."  The Circuit Court was not
> required by HRPP Rule 11(c)(2) to further advise Tuialii
> that restitution may be imposed as part of his sentence.
> The Circuit Court complied with HRPP Rule 11.

121 Hawai'i at 139, 214 P.3d at 1129.  Likewise, in this case,

the State argued Kealoha knew and understood that restitution

could be imposed because paragraph six of Kealoha's change of

plea forms listed restitution as a possible penalty, and Kealoha

indicated that he read and understood the forms, and the ICA

referenced this argument in its SDO.  Kealoha, SDO at 3 n.6.

Paragraph six of Kealoha's change of plea forms did indeed list

restitution as a penalty that may be imposed upon entry of a

guilty or no contest plea.

Contrary to the ICA's rulings, however, the boilerplate

language in Kealoha's change of plea forms, which included

reference to sentencing options inapplicable to Kealoha, is

insufficient to satisfy the court's HRPP Rule 11(c)(2)

obligation to personally advise the defendant in open court of

the maximum penalty provided by law.  The forms did not provide

21

Kealoha the personal, oral colloquy required by HRPP Rule 11(c)(2).

Therefore, we hold that trial courts must include the possibility of restitution in the oral colloquy required by HRPP Rule 11(c)(2). We overrule <u>Tuialii</u> to the extent it held otherwise.

### 2. Restitution is a direct consequence of conviction.

A proper oral colloquy regarding any possible restitution sentence is also required to satisfy a trial court's duty to ensure that a defendant's change of plea is knowingly, intelligently, and voluntarily made, with respect to the consequences of the plea:

> A trial judge is constitutionally required to ensure that a guilty plea is voluntarily and knowingly entered. In determining the voluntariness of a defendant's proffered guilty plea, the trial court should make an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences.

<u>State v. Krstoth</u>, 138 Hawai'i 268, 273, 378 P.3d 984, 989 (2016) (internal quotation marks and citations omitted). "Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea." <u>State v. Nguyen</u>, 81 Hawai'i 279, 292, 916 P.2d 689, 702 (1996). We have also held, however, that "an accused need not be informed prior to the acceptance of his guilty plea about every

22

conceivable collateral effect the conviction might have."[15]
Reponte, 57 Haw. at 364, 556 P.2d at 584.

The direct/collateral consequence framework is meant to provide guidance to trial courts with respect to what they must ensure defendants know in order to make constitutionally valid pleas. In Nguyen, we looked to other jurisdictions' law to distinguish direct consequences from collateral ones:

> A direct consequence is one which has a definite, immediate and largely automatic effect on defendant's punishment. The failure to warn of . . . collateral consequences will not warrant vacating a plea because they are peculiar to the individual and generally result from the actions taken by agencies the court does not control.

Nguyen, 81 Hawai'i at 288, 916 P.2d at 698 (citing People v. Ford, 657 N.E.2d 265, 267–68 (N.Y. 1995) (citations omitted) (overruled on other grounds by People v. Peque, 3 N.E.3d 617, 636-37 (N.Y. 2013)).

In a footnote in Tuialii, citing our decision in State v. Gaylord, 78 Hawai'i 127, 890 P.2d 1167 (1995), the ICA opined that treating restitution as a collateral consequence of a plea would be "consistent with Hawai'i case law, which views restitution as a 'quasi-civil' compensatory action, an 'adjunct

---

[15] Previous cases have held that collateral consequences of conviction include sex offender registration, Foo v. State, 106 Hawai'i 102, 114, 102 P.3d 346, 358 (2004), the possibility of deportation, Nguyen, 81 Hawai'i at 287, 916 P.2d at 697, and prohibitions on the ownership of firearms and ammunition, Reponte, 57 Haw. at 364-65, 556 P.2d at 584. We note that courts are required by law to advise all defendants of the possibility of deportation at arraignment and change of plea. HRS §§ 802E-2, 802E-4; HRPP Rules 10(e)(4), 11(d).

of punishment of the offender,' in contrast to a fine, which advances punitive objectives." 121 Hawai'i at 139, n.2, 214 P.3d at 1129, n.2 (citing Gaylord, 78 Hawai'i at 150-54, 890 P.2d at 1190-94). The SDO in Kealoha's case cited Tuialii as holding that restitution was a collateral consequence of a guilty or no contest plea. Kealoha, SDO at 3 (citing Tuialii, 121 Hawai'i at 139, n.2, 214 P.3d at 1129, n.2).

While it is true that this court has distinguished "quasi-civil" restitution from criminal fines, Tuialii's characterization of Gaylord is inaccurate. In State v. Murray, 63 Haw. 12, 621 P.2d 334 (1980), we recognized "a legislative contemplation that [HRS § 706-605] should serve several objectives, including retribution, rehabilitation, and restitution." 63 Haw. at 20, 621 P.2d at 339. We determined, based on the legislative history of the 1975 amendment to HRS § 705-605, that "reparation of a direct victim" was not the only purpose of restitution, and that instead the restitution amendment had "a purpose and design that encompasses the punishment and the rehabilitation of the offender." 63 Haw. at 18-19, 621 P.2d at 339. "[R]estitution or reparation," in our view, serves "as an optional penal sanction" in the correctional process. 63 Haw. at 15, 621 P.2d at 337.

In Gaylord, we criticized the way Murray "blurred the distinction between criminal fines . . . and restitution" not

because we thought restitution was not punitive, but because we needed to make clear that payment of restitution, as a stand-alone rehabilitative sentence, was "an insufficient basis for the imposition of a prison term that is not appropriate on other independent grounds."[16]  Gaylord, 78 Hawai'i at 152, 154, 890 P.2d at 1192, 1194.  While we stated that restitution, because of its rehabilitative potential, was insufficient to justify imposing consecutive terms of imprisonment, Gaylord did not actually address whether restitution is a direct or a collateral consequence of conviction.

We also did not address this issue in State v. Feliciano, 103 Hawai'i 269, 81 P.3d 1184 (2003), in which we held that the sentencing court could not convert restitution originally imposed as a condition of probation into a free standing order to ensure the defendant paid restitution after his term of probation ended.  103 Hawai'i at 275, 81 P.3d at 1190.  In that case, less than ten years after Gaylord, we reiterated that "[r]estitution contains a rehabilitative component, as its

---

[16]    We looked to the legislative history of HRS § 706-605, Murray, and relevant academic sources to conclude that restitution was rehabilitative in nature, at least as far as it was "calculated to develop in the offender 'a degree of self-respect and pride in knowing that he or she has righted the wrong committed.'"  Gaylord, 78 Hawai'i at 152, 890 P.3d 1192 (citing Stand. Comm. Rep. No. 789, in 1975 Senate Journal, at 1132).  Our discussion of restitution in Gaylord was based on a previous version of HRS § 706-605 (Supp. 1992), which allowed sentencing courts to order restitution at their discretion and limited that order to "an amount the defendant can afford to pay."  78 Hawai'i at 150, 890 P.2d at 1190 (citing HRS § 706-605(1)(d) (Supp. 1992)).

purpose is not only to repay the person injured by the criminal act, but also to develop in the offender 'a degree of self-respect and pride' for having 'righted a wrong committed.'"  103 Hawai'i at 272, 81 P.3d at 1187 (citing Murray, 63 Haw. at 19 n.11, 621 P.2d at 339 n.11).  We summarized Gaylord as recognizing "that restitution is 'quasi-civil' in nature because it is designed to compensate the victim as an adjunct of punishment."  Feliciano, 103 Hawai'i at 272, 81 P.3d at 1187 (emphasis added) (citing Gaylord, 78 Hawai'i at 152, 890 P.2d at 1193).  In acknowledging that restitution has "a rehabilitative component" and provides compensation "as an adjunct of punishment," we reaffirmed that restitution is not solely rehabilitative.  See Feliciano, 103 Hawai'i at 272, 81 P.3d at 1187.  But again, we did not determine whether restitution was a direct or a collateral consequence of conviction.

Based on our analysis in Section IV(A)(1) above and for the reasons explained below, we now hold that restitution is a direct consequence of conviction.

In the most literal and plain meaning of the word "direct," restitution is a direct consequence of a guilty or no contest plea, or of a finding of guilt.  See Black's Law Dictionary (10th ed. 2014) (defining "direct" as "1. (of a thing) straight; undeviating . . . 2. (of a thing or a person) straightforward . . . 3. Free from extraneous influence; immediate[.]").  As

discussed above, restitution is an authorized disposition of convicted defendants under HRS § 706-605 — like imprisonment, fees, and fines — and may be imposed only upon conviction. Whether imposed by free standing order, or as a condition of probation, restitution is part of the defendant's sentence and judgment of conviction. Restitution therefore "has a definite, immediate and largely automatic effect on the defendant's punishment" because it is imposed by the court alongside the defendant's other punishments.[17]

Even when a sentencing court has bound itself pursuant to HRPP Rule 11(f)(1)[18] to a plea agreement that specifies the penalties to be imposed without including restitution, the

---

[17] Other jurisdictions have also reached this conclusion. See, e.g., Harris v. Superior Court, 222 Cal.Rptr.3d 192, 197 (2017) ("A consequence is direct . . . if it has a definite, immediate and largely automatic effect on the range of the defendant's punishment . . . Victim restitution is a direct consequence of the plea.") (citations and internal quotations omitted); Holland v. United States, 584 A.2d 13, 15 (D.C. 1990) ("[W]e have no difficulty concluding that restitution is a direct consequence about which a defendant should be warned."); State v. Cameron, 633 P.2d 901, 905 (1981) ("We conclude that restitution is a direct consequence of entering a guilty plea and the sentencing court may not impose restitution upon a defendant who pleads guilty, unless defendant is advised of that possibility prior to entering his plea.").

[18] HRPP Rule 11(f)(1) provides:

> The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or no contest to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.

sentencing court must advise a defendant of the possibility of a restitution sentence when restitution could possibly be ordered, as part of its obligation to advise the defendant of all possible maximum penalties.  Thus, as part of their "constitutionally required" duty "to ensure that a guilty [or no contest] plea is voluntarily and knowingly entered," Krstoth, 138 Hawai'i at 273, 378 P.3d at 989 (internal quotation marks and citations omitted), trial courts must advise defendants that restitution may be ordered as part of their sentences.

In this regard, we note that under HRS § 706-647(1) (2000), restitution orders may be enforced as though they were civil judgments.  Free standing orders of restitution are therefore enforceable for ten years and can potentially be extended to twenty years from the date of the judgment.  See HRS § 657-5 (2001) (permitting "any judgment or decree" to extend no longer than "twenty years from the date of the original judgment or decree.").  Furthermore, the imposition of restitution can delay the defendant's satisfaction of other monetary punishments: restitution must be paid before all other monetary sanctions, including fines.  See HRS § 706-651 (2016) (defining the order of priority for payments made by a defendant).

In addition, since 2006, restitution has been a mandatory disposition of convicted defendants whenever it is requested by a victim and shown to be reasonable and verifiable, according to

28

HRS § 706-605(7) as well as HRS § 706-646(2) (2016).[19] The 2006 amendment also forbade sentencing courts from "consider[ing] the defendant's financial ability to make restitution in determining the amount of restitution to order." HRS § 706-605(7) (2006); HRS § 706-646(2), (3) (2006). As a result, restitution <u>must</u> now be imposed when the statutory conditions are met, even if the defendant cannot pay and cannot develop "a degree of self-respect and pride in knowing that he or she has righted the wrong committed." See <u>Gaylord</u>, 78 Hawai'i at 152, 890 P.3d 1192 (citing Stand. Comm. Rep. No. 789, in 1975 Senate Journal, at 1132). In contrast, a defendant cannot be ordered to pay a fine unless "[t]he defendant is or will be able to pay the fine[.]" HRS § 706-641(3)(a) (1986). Thus, a restitution order, despite its rehabilitative and compensatory functions, can have significant and direct impacts on a defendant's punishment.[20]

---

[19]     The language relevant to this appeal became effective in 2006, and was not altered in the 2012, 2013, or 2016 amendments to this section; HRS § 706-646(2) provides, in relevant part:

> (2)  The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim. . . .

[20]     <u>Gaylord</u> is still good law; payment of restitution as a stand alone rehabilitative sentence is still "an insufficient basis for the imposition of a prison term that is not appropriate on other independent grounds." 78 Hawai'i at 154, 890 P.2d at 1194. However, we emphasize that —- as our case law has always acknowledged —- restitution is a sentence with rehabilitative and compensatory <u>potential</u>, but it is still a supplement to the defendant's punishment. See <u>Gaylord</u>, 78 Hawai'i at 153, 890 P.2d at 1193 ("Restitution . . . is 'compensation for the victim' as an <u>adjunct</u> of 'punishment of the
(continued. . .)

Therefore, with respect to restitution, the court must, at a minimum, ensure the defendant understands the following before accepting a change of plea: (1) the court <u>must</u> order restitution for reasonable and verifiable losses requested by a "victim" or when the crime victim compensation fund makes an award; (2) the court cannot waive the restitution amount or convert it to community service;[21] and (3) unless the amount of restitution has already been determined, the court cannot determine what a possible restitution amount will be until a later time.

Based on the reasoning above, we also overrule <u>Tuialii</u>'s holding that restitution is a collateral consequence of conviction.[22]

---

(continued. . .)
offender[.]'") (emphasis in original) (citing <u>Murray</u>, 63 Haw. at 15, 621 P.2d at 337).

[21]     HRS § 706-644(4) (2000) provides:

> If it appears that the defendant's default in the payment of a fee, fine, or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment, reducing the amount of each installment, or revoking the fee, fine, or the unpaid portion thereof in whole or in part, or converting the unpaid portion of the fee or fine to community service.  <u>A defendant shall not be discharged from an order to pay restitution until the full amount of the restitution has actually been collected or accounted for.</u>

(Emphasis added.)

[22]     The remaining holding in <u>Tuialii</u> —- that restitution may be ordered for a victim who has already been reimbursed by an insurer —- is not before us. <u>See Tuialii</u>, 121 Hawaiʻi at 140-42, 214 P.3d at 1130-32 (concluding that ordering a defendant to pay the full amount of losses to the victim, without any reduction for amounts already paid by an insurer, is permitted by HRS § 706-646).

**B.    Kealoha's Remedies**

We have held that "[m]anifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea." Nguyen, 81 Hawai'i at 292, 916 P.2d at 702   It is well settled that the terms of a plea agreement serve as inducement for the entering of a plea, and must be fulfilled.  State v. Adams, 76 Hawai'i 408, 414, 879 P.2d 513, 519 (1994) (citing State v. Costa, 64 Haw. 564, 566, 644 P.2d 1329, 1331 (1982); Santobello v. New York, 404 U.S. 257, 262 (1971)).  "Indeed, due process requires that the State uphold its end of the bargain" and manifest injustice occurs when the State violates a plea agreement, entitling the defendant to withdraw his or her plea.  Adams, 76 Hawai'i at 414, 879 P.2d at 519 (citing State v. Yoon, 66 Haw. 342, 347, 662 P.2d 1112, 1115 (1983); United States v. Crusco, 536 F.2d 21, 26-27 (3d Cir. 1976)).  Likewise, when a court binds itself to a plea agreement pursuant to HRPP Rule 11(f)(1), due process requires the court to "uphold its end of the bargain" by sentencing the defendant in accordance with the agreement's terms.  When the sentencing court violates a plea agreement to which it is bound, the defendant is denied due process and manifest justice occurs as a matter of law.  When a plea agreement is breached, "either resentencing or withdrawal of a plea may be the appropriate remedy depending on the defendant's

31

particular circumstances." Adams, 76 Hawai'i at 414, 879 P.2d at 519.

Based on these legal principles, Kealoha asks this court to order a correction of his sentence to afford him specific performance of his plea agreement without restitution, or in the alternative, to allow withdrawal of his plea. Based on the reasons below, however, Kealoha is not entitled to the specific relief he seeks, but must instead seek such relief under HRPP Rule 40.[23]

---

[23] HRPP Rule 40 (2006) provides in relevant part:

(a) Proceedings and grounds. The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:

(1) FROM JUDGMENT. At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:

(i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawai'i;
(ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;
(iii) that the sentence is illegal;
(iv) that there is newly discovered evidence; or
(v) any ground which is a basis for collateral attack on the judgment.

For the purposes of this rule, a judgment is final when the time for direct appeal under Rule 4(b) of the Hawai'i Rules of Appellate Procedure has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated, provided that a petition under this rule seeking relief from judgment may be filed during the pendency of direct appeal if leave is granted by order of the appellate court. . . .

With respect to Kealoha's request that this court order resentencing pursuant to the Rule 11 plea agreement without any restitution, as noted above, the circuit court was <u>required</u> by law to order restitution in a reasonable and verifiable amount once it was requested by the victims. <u>See</u> HRS § 706-646(2) ("The court <u>shall</u> order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims . . . when requested by the victim.") (emphasis added). Although the plea agreement did not contain restitution as part of the sentence, resentencing for specific performance of the plea agreement is not an available remedy.[24]

---

[24] The State asserted at oral argument that there was no plea agreement because the "Rule 11 agreement as to sentencing" was not written and had not been approved by the prosecutor's office." This argument was never raised before the ICA and is unsupported by the record, which clearly reflects the prosecutor's oral assent to the plea agreement. Further, the circuit court bound itself to the plea agreement:

> THE COURT: <u>What is the plea agreement?</u>
> [DEFENSE COUNSEL]: Everything concurrent.
> THE COURT: And he gets the open term and everything concurrent?
> [DEFENSE COUNSEL]: Yeah.
> THE COURT: <u>I will bind myself to this agreement.</u>

The State also argued that the circuit court's failure to advise Kealoha about restitution was harmless error, analogizing this case to federal cases and FRCrP Rule 11. The State's harmless error argument was not raised below, and regardless is without merit because we conclude that restitution is a direct consequence of a guilty plea. In any event, we note this court has never embraced the federal courts' harmless error approach to change of plea advisements, and has actually consistently ruled that sentencing courts must strictly adhere to HRPP Rule 11's dictates. <u>See</u> <u>Cornelio</u>, 68 Haw. at 646, 727 P.2d at 1127 ("This court has stressed that it is incumbent on all trial judges to strictly conform to the guidelines provided in HRPP Rule 11." (citing <u>State v. Vaitogi</u>, 59 Haw. 592, 594-95, 585 P.2d 1259, 1261 (1978)).

Furthermore, the federal courts' harmless error doctrine has typically only applied when the defendant is advised of a potential fine at their

(continued. . .)

Kealoha alternatively requests that he be permitted to withdraw his guilty plea. In this regard, HRPP Rule 32(d) permits a motion to withdraw plea to be filed no later than ten days after imposition of sentence,[25] but Kealoha did not file a motion with the circuit court to withdraw his plea. He asked to withdraw his plea for the first time on appeal. Therefore, to request a withdrawal of his plea, Kealoha must now proceed by way of an HRPP Rule 40 petition to seek relief from judgment. See HRPP Rule 32(d) ("At any later time, a defendant seeking to withdraw a plea of guilty . . . may do so only by petition pursuant to Rule 40 of these rules[.]").

We also note HRS § 706-645(1)(1992) provides that a defendant sentenced to pay restitution who is "not in contumacious default in the payment thereof may at any time

_____

(continued. . .)
change of plea, but is ultimately sentenced to a restitution amount that is less than the advised-upon fine. See, e.g., United States v. Crawford, 169 F.3d 590, 591-93 (9th Cir. 1999) (holding that failure to advise on restitution was harmless error where the defendant was advised that he could be ordered to pay a fine of up to $250,000, but was ultimately ordered to restitution in the amount of $2,511.86 with no fine). Even if we chose to embrace this harmless error analysis, it would be inapplicable to Kealoha because the circuit court did not advise him of any potential fines at his change of plea.

[25]    HRPP Rule 32(d) provides, in relevant part:

> A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea. . . .

petition the court which sentenced the defendant for a revocation of . . . restitution or of any unpaid portion thereof." (Emphasis added.) The sentencing court may revoke restitution in whole or in part if "the circumstances which warranted the imposition of the . . . restitution have changed," or if "it would otherwise be unjust to require payment." HRS § 706-645(2). Thus, Kealoha could also seek relief under HRS § 706-645 in a Rule 40 petition.

For these reasons, Kealoha's requested relief is denied without prejudice to him seeking appropriate relief in the circuit court.

## C. Appellate attorney's fees for work before the ICA

Finally, Kealoha's court-appointed appellate counsel seeks review of the ICA's July 17, 2017 order. For his work before the ICA, counsel requested $7,425 in appellate attorney's fees. The ICA's July 17, 2017 order states:

> Upon consideration of the Request for Appellate Attorney's Fees and Costs by . . . court-appointed counsel for Defendant-Appellant Kristopher Kealoha, and the attachments thereto submitted on May 22, 2017, pursuant to HRS § 802-5 and HRAP Rule 39, attorney's fees in the reduced amount of $5,000.00 and costs in the reduced amount of $54.90[] are reasonable.

HRS § 802-5 (2015) provides, in relevant part, as follows:

> **§802-5 Appointment of counsel; compensation.** (a) . . . [T]he judge shall appoint counsel to represent the person at all stages of the proceedings, including appeal, if any.
>
> . . . .
>
> (b) The court shall determine the amount of reasonable compensation to appointed counsel, based on the rate of $90

35

> an hour; provided that the maximum allowable fee shall not exceed the following schedule:
>
> . . . .
>
> (4) Appeals                     5,000
>
> . . . .
>
> Payment in excess of any maximum provided for under paragraphs (1) to (6) may be made whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of that court.

Therefore, under HRS § 802-5(b)(4)(2014), the maximum allowable fee for a criminal "proceeding, including appeal," is $5,000, unless "the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of that court." HRS § 802-5(b)(2015). Counsel argues he should have been granted fees in excess of $5,000 because, although Kealoha's three criminal cases were consolidated for appellate purposes, he reviewed dockets, drafted notices of appeals and jurisdictional statements, and ordered transcripts for each of the three cases. He also argues he sought temporary relief from restitution after the cases were consolidated.[26]

---

[26] Counsel also asserts that he performed additional work, for which he did not bill, to respond to an order to show cause before the ICA. However, we have previously said "[i]t would be patently unreasonable to compensate a court-appointed attorney for work not documented[.]" Mohr, 97 Hawaiʻi at 6, 32 P.3d at 652.

36

We review a court's award of attorney's fees for abuse of discretion.  Hart, 126 Hawai'i at 455, 272 P.3d at 1222.  In this regard, although appellate review of fee awards requires the judge reducing the request to set forth reasons for the reduction, "[t]he nature of appellate work is subject to ready evaluation by this court, which reviews similar attorney's fees requests for work performed before it," and therefore remand is not required for this court to review the ICA's reduction of an appellate fee request.  Bettencourt, 126 Hawai'i at 31, 265 P.3d at 1127.

Upon review of appellate counsel's time sheets and the record below, we conclude the ICA abused its discretion in summarily reducing appellate counsel's attorney's fees to $5,000.  Counsel's time sheets show that fees above $5,000, although not all the fees he requested, were necessary to provide him fair compensation.[27]  We conclude that in order to provide fair compensation, counsel is entitled to reasonable appellate attorney's fees in the amount of $6,025.50, for 66.95 hours of work before the ICA.[28]

---

[27]  Some of appellate counsel's fee requests were duplicative or excessive, particularly with respect to phone calls made and documents filed before Kealoha's three appeals were consolidated.

[28]  We need not and do not address counsel's assertion that there were three "proceedings," each subject to the statutory fees cap.

We therefore award appellate attorney's fees in the amount of $6,025.50 for appellate counsel's work before the ICA.

### V. Conclusion

Based on the foregoing, the circuit court's judgments of conviction and the ICA's judgment on appeal affirming the convictions are affirmed, but based on the reasoning in this opinion. Kealoha's requested relief is denied without prejudice to any petition he may file in the circuit court. Finally, the ICA's July 17, 2017 order is vacated in part as to the attorney's fees award only, and appellate counsel is awarded $6,025.50 in appellate attorney's fees for his work before the ICA; the costs award of $54.90 is affirmed.

Shawn A. Luiz
for petitioner

Loren J. Thomas
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

